FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

2013 JUL -1  P 3: 37

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| KAREN ANDERSON | ) |
| PHILLIP ANDERSON | ) |
| JULIE BACON | ) |
| MELISSA JAMES BELL | ) |
| SANDRA BERRIOS | ) |
| JENNIFER BRADBURY | ) |
| NEIL BRADBURY | ) |
| JAN BROWN | ) |
| VIVIAN BROWN | ) |
| JONATHAN COBIA | ) |
| YENENESH DETSA | ) |
| JEAN DUBREY | ) |
| CHARLOTTE EMMANUEL | ) |
| ROBIN FORTUNE | ) |
| GAIL GOLD | ) |
| HAROLD GOLD | ) |
| ROBERT HUGHES JR. | ) |
| TIMOTHY KELLY | ) |
| ESTER LOPES | ) |
| LORI PINNEY | ) |
| LISA LOUISON | ) |
| JEAN MARINER | ) |
| WINNIFRED NTOW | ) |
| KRISTIN POFF | ) |
| STEPHEN POFF | ) |
| JOHN PORTER | ) |
| JONATHAN RANCE | ) |
| CAROL ROBINSON-HUNTLEY | ) |
| JAMES SANMATEO | ) |
| MELVIN SEARCY | ) |
| SHELIA SEARCY | ) |
| DAVID STANLEY | ) |
| SUSAN STANLEY | ) |
| FRANCIS TANNER | ) |
| ALICIA TAYLOR | ) |
| ANN WETHERBEE | ) |
| JAMES WETHERBEE | ) |
| MELVIN YARBROUGH | ) |
| | ) |
| *individually and on* | ) |
| *behalf of all others similarly situated,* | ) |
| | ) |

CIVIL ACTION NUMBER

3:13cv419

REP

|  |  |
|---|---|
|                  Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| SAMUEL I. WHITE, P.C. | ) |
| | ) |
| SERVE:     Samuel I. White, Partner | ) |
|               5040 Corporate Woods Drive | ) |
|               Suite 120 | ) |
|               Virginia Beach, VA 23462 | ) |
| | ) |
|                 Defendant. | ) |
| | ) |

## CLASS COMPLAINT

COME NOW the Plaintiffs, individually and on behalf of all others similarly situated, by counsel, and allege the following facts that entitle them to relief, both as a class and individually:

## INTRODUCTION

1.     Defendant, a foreclosure mill, engaged in a systemic practice of law-skirting and reckless business practices designed for the dual purposes of speeding up consumer foreclosures and ensuring that the mill had the lowest cost structure that they could construct.  To accomplish these ends, the Defendant misrepresented the custody and ownership of mortgage notes and its supposed compliance with Virginia's foreclosure requirements to the Circuit Courts through their Commissioners of Accounts, consumer victims and others; and largely ignored federal law enacted to protect consumers against overly aggressive debt collectors. Accordingly, Plaintiffs bring these claims for actual and statutory, damages, costs, and attorneys' fees pursuant to the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*. These claims arise from the Defendant's unlawful attempts to collect delinquent home mortgage debts allegedly owed by Plaintiffs and the putative class members. Plaintiffs allege that, to the extent that the Defendant was validly and properly appointed as Substitute Trustee, it breached its fiduciary

duties as a trustee under the Deeds of Trust by acting in conflict with the interests of the named individual Plaintiffs and the putative class members; by failing to undertake necessary actions regarding the prerequisites to instituting foreclosure sales and mailing notices of the alleged foreclosure sales as required under the Deeds of Trust and by law; and by exceeding the scope of their authority.

2.     Furthermore, Plaintiffs and the putative class members allege that the Defendant made a series of false statements and representations in connection with the collection of the alleged debts and foreclosures in its effort to rush through the foreclosure process as quickly as possible. The Defendant receives monetary benefit from doing so, including, but not limited to, incentive payments from the alleged mortgage servicers and others based in large part on the speed with which they are able to conduct foreclosures. Defendant also obtains a competitive edge against other foreclosure companies by sacrificing their responsibilities to ensure the fundamental integrity of the foreclosure process in exchange for speed.  Servicers refer more cases to the Defendant based upon the speed with which it conducts foreclosure sales.  Thus, not only does the Defendant engage in unlawful conduct, but also obtains an unfair advantage against entities that engage in a more thoughtful and deliberate process in an effort to comply with the law.

3.     Finally, Plaintiffs and the putative class members allege that Defendant violated the FDCPA by sending letters to consumers that failed to identify the creditors to whom the debts were owed, contained false statements and material misrepresentations regarding the collection of a debt by a debt collector, failed to accurately provide Plaintiffs notice of their right to validate the debt, and initiated foreclosure activities when it had no present right to possession of the property.

## JURISDICTION

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). The Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

5.      Plaintiffs are all natural persons and consumers within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3). Additionally, they all owned properties located in Virginia upon which the Defendant either conducted or attempted to conduct a foreclosure sale.

6.      Defendant Samuel I. White P.C. (hereafter "SIWPC") is a Virginia law firm, the principal purpose of whose business is the collection of debts, and has a main office located at 5040 Corporate Woods Drive, Suite 120, Virginia Beach, Virginia 23462.

7.      The Defendant regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(6).

## STATEMENT OF FACTS

### FACTS COMMON TO ALL PLAINTIFFS

#### The Defendant Is a Debt Collector

8.      Defendant is a law firm whose practice is focused on the collection of debts.

9.      The Defendant advertises that it provides services to creditors with regard to foreclosures, bankruptcies, and evictions, among other services.[1]

10.     The Defendant regularly collects home loan debts, bringing its collection activities within the purview of the FDCPA, at 15 U.S.C. § 1692a(5).

---

[1] Samuel I. White, P.C. Attorenys at Law, http://www.siwpc.net (last visited Nov. 28, 2012).

11.     Defendant regularly demands payment of claimed arrearages from consumers and provides reinstatement quotes to consumers, upon request, itemizing amounts that they are attempting to collect which often have no basis in reality.

12.     Defendant regularly tells consumers in correspondence that "this is an attempt to collect a debt and any information obtained will be used for that purpose" and/or that "the communication is from a debt collector".  These are disclosures that the FDCPA, at 15 U.S.C. § 1692e(11), requires debt collectors to provide in all written communications (other than a formal pleading) sent "in connection with the collection of any debt".

13.     Defendant regularly purports to provide verification of debts required by the FDCPA, at 15 U.S.C. § 1692g(b), upon written request from consumers in an effort to convince the consumer to pay the amount demanded.

### Defendant's Foreclosure Operation

14.     The Defendant accomplishes its debt collection and foreclosure business by instituting foreclosure proceedings against consumers for mortgage loans that have been referred to it by various loan servicers.

15.     When the mortgage loans are referred to the Defendant, including the Plaintiffs' mortgage loans in this case, it does not actually receive the original note prior to instituting foreclosure proceedings.

16.     In fact, rather than locating the entity that is the actual noteholder or requesting the original note from the servicer, Defendant often uses a false "lost note affidavit". In doing so, Defendant attempts to streamline the foreclosure process.

17.    Once the mortgage loans are referred to the Defendant, it creates a "Substitution of Trustee" document, which it claims gives it the authority to conduct a foreclosure sale under the subject Deeds of Trust.

18.    The Substitution of Trustee document is false and improper in several respects.

19.    The document identifies the loan servicers as the "noteholders" or "agents" of the noteholders. These statements are false.

20.    Instead, the entities allegedly appointing the Defendant as substitute trustee are merely the loan servicers rather than the owners of the notes or the beneficiaries or secured parties under the subject deeds of trust.

21.    The Defendant does this as an alternative to locating and identifying the actual noteholders in an effort to save time and costs with which they are able to conduct foreclosures.

22.    The Defendant then sends this document to various third-party entities purporting to be the "noteholders" or loan servicers, via electronic wires or through the United States postal service, at which time they are allegedly signed by individuals claiming to have the authority to appoint substitute trustees under the subject Deeds of Trust. The document is also allegedly notarized.

23.    For example, these representatives often have generic titles such as "Assistant Secretary", "Assistant Vice President", "Authorized Signer" or "Authorized Officer".

24.    Upon information and belief, the individuals who sign these sworn statements on the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, do not have such personal knowledge or such legal standing.  Upon information and belief, certain

individuals who either signed these statements or purported to notarize them did not do so personally.

25.     Other times, these substitute trustee documents are created and signed by Defendant SIWPC and/or its employees as "attorney in fact" for the "noteholder" or "agent" of the noteholder. Therefore, Defendant essentially attempts to appoint itself as substitute trustee.

26.     Plaintiffs' counsel has reviewed numerous substitution of trustee documents prepared and signed by Defendant's employees, and upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

27.     In these instances, the date on the notary block is often filled out with a different pen or marker and/or with much different handwriting than the rest of the writing, presumably by a different individual employed by the Defendant, and presumably so the dates of the signature blocks match.

28.     These documents are a legal nullity and do not actually authorize the Defendant to act as Substitute Trustee.

29.     After preparing the substitution of trustee documents, or possibly before doing so, the Defendant then begins the process of mailing various letters and notices of foreclosure to consumers, including copies of these false substitute trustee documents.

30.     Upon information and belief, these letters are form letters that the Defendant sent to every consumer from whom it attempted to collect a debt and for whom it attempted to conduct a foreclosure sale of their home.

31.     These letters all contain similar misrepresentations, including but not limited to, an incorrectly identified "noteholder" or "creditor" of the loan.

32.     Consumers rely on these false documents when they subsequently contact or pay money to the Defendant in an attempt to save their homes or when they relocate their families, with the mistaken belief that the Defendant was validly appointed substitute trustee and had the authority to sell their homes.

33.     Consumers also rely on these statements when determining the alternatives to foreclosure that are available depending on the type of or owner of their loans.

34.     The Defendant then advertises the foreclosure sales on its website and in local newspapers throughout Maryland, Washington D.C., and Virginia, listing itself as the substitute trustee for the sale.

35.     Foreclosure sale notices are mailed to consumers throughout Maryland, Washington D.C., and Virginia using the United States post office.

36.     Once an alleged foreclosure sale occurs, the Defendant creates a "Deed of Foreclosure" document in which the alleged substitute trustee conveys the subject property to a grantee. This grantee is often not the last and highest bidder at the foreclosure sale, but is instead a third party or subsequent purchaser. The property is conveyed in this way to avoid the imposition of certain taxes or other fees.

37.     Plaintiffs' counsel has reviewed a considerable amount of documents created by the Defendant, which are subsequently mailed to consumers or to the Commissioners of Accounts in the Circuit Courts across the Commonwealth of Virginia, and has identified a pattern and practice of documents with substantially the same or similar misrepresentations.

38.     Plaintiffs allege that the Defendant engages in this conduct to maximize the number of foreclosures it can conduct and the amount of fees and commissions it will receive from the foreclosure sales.

39.     Further, the Defendant illegally received fees for legal services by representing that it completed certain work or conducted the foreclosures in compliance with all applicable laws, regulations, conditions precedent, and servicer and lender requirements, when in fact it has not.

40.     For example, the Defendant received a commission and/or legal fees out of the sale of Plaintiffs' homes or as part of a total payment required to prevent the foreclosure sale. These fees were all directly paid by the Plaintiffs and the putative class members, or indirectly passed on to them in the accounting of the foreclosure sales.

41.     This conduct demonstrates a systematic pattern of unlawful conduct to the detriment of consumers, the Virginia Courts through the Commissioners of Accounts, and other foreclosure law firms or trustees who comply with the law.

### Defendant Owes a Fiduciary Duty to the Homeowners

42.     Virginia law provides that a trustee appointed under a deed of trust is a fiduciary for both the borrower and the noteholder and must act impartially between them.

43.     The Defendant made a substantial amount of misrepresentations to the Plaintiffs and the putative class members, including recklessly created documents appointing the substitute trustee and misrepresentations about who is the actual noteholder, and thus what alternatives to foreclosure are available.

44.     This demonstrates not only a lack of diligence by the Defendant, the alleged substitute trustee under the subject Deeds of Trust, but also exhibits bad faith in its complete disregard for the rights of the borrowers in favor of those of the servicer, noteholder, or other beneficiary under the Deeds of Trust.

45.     The Defendant therefore breached its fiduciary duty of impartiality under Plaintiffs' Deeds of Trust. Upon information and belief, the Defendant also breached the fiduciary duty that it owed to the putative class members.

### Loans Owned by Fannie Mae Impose Additional Duties

46.     Defendant also breached its fiduciary duty of impartiality through its failure to follow Federal National Mortgage Association's ("Fannie Mae") Servicing Guidelines (the "Guide") when conducting foreclosures of loans owned by Fannie Mae.

47.     At all times relevant hereto, Defendant was "designated counsel" for loans owned by Fannie Mae.

48.     As designated counsel, Defendant had knowledge of Fannie Mae's foreclosure policies and procedures as outlined in the Guide and subsequent directives and further agreed to abide by such policies and procedures.

49.     Plaintiffs' Deeds of Trust are in the nature of a contract and are to be construed according to their terms to the extent the terms are not in conflict with the requirements of law.

50.     Because certain Plaintiffs had a Fannie Mae owned loan, additional requirements and procedures must be met prior to a foreclosure sale being authorized. These requirements were incorporated into Plaintiffs' Deeds of Trust.

51.     The Deeds of Trust securing Fannie Mae owned loans must be construed in conjunction with Fannie Mae's guidelines, which have the effect of applicable law.

52.     On April 28, 2010, Fannie Mae amended its Guide to address procedural requirements for foreclosures for loans owed by Fannie Mae. The Guide states that the new requirements are "particularly important and material to Fannie Mae's ongoing effort to keep borrowers in their homes and to reduce credit losses."

53.    The Guide states "Fannie Mae requires the servicer and the foreclosure attorney (or trustee) to interact throughout the conduct of foreclosure proceedings." Some of this required interaction includes:

> The servicer must submit a complete referral package to the selected attorney (or trustee). The referral package must include mortgage loan status data and the documentation the attorney (or trustee) needs to conduct foreclosure proceedings.
> . . . .
> The attorney (or trustee) will acknowledge receipt of the referral package (and indicate whether or not it is complete) within two business days. The servicer must provide any required missing documentation to the attorney (or trustee) within five business days after it received the attorney's (or trustee's) request.

FANNIE MAE, FANNIE MAE 2010 SERVICING GUIDE UPDATE PART VII AND PART VIII 801-73–74 (April 2010).

54.    As detailed above, Defendant was required to acknowledge receipt of the referral package from Plaintiffs' servicer within two business days. In this acknowledgment, Defendant was further required to indicate any documents it needed in order to conduct the foreclosure, which would have included either the original note or a lost note affidavit pursuant to Virginia Code § 55-59.1(B).

55.    Specifically, Virginia Code § 55-59.1(B) provides that the trustee must either possess the original note or a lost note affidavit from the beneficiary that must then be provided to the homeowner.

56.    Defendant had notice and was aware of this requirement for Fannie Mae loans, but insisted on instituting foreclosure proceedings against homeowners without first obtaining the documents needed to conduct the foreclosure proceedings.

57.     The Defendant adopted these practices and procedures to speed up the foreclosure process, while blatantly ignoring its duties under the Plaintiffs' Deeds of Trust, the Fannie Mae Servicing Guidelines incorporated into the Deed of Trust, and Virginia law.

58.     Defendant claimed that it was appointed substitute trustee under Plaintiffs' Deed of Trust.

59.     However, at no time did the Defendant actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

**Loans Owned by Freddie Mac Impose Additional Duties**

60.     Similarly, Defendant also breached its fiduciary duty of impartiality through its failure to follow Federal Home Loan Mortgage Corporation's ("Freddie Mac") Single-Family Seller/Servicer Guide ("Freddie Mac's Guide")[2] when conducting foreclosures of Freddie Mac owned loans.

61.     Defendant is "designated counsel" for loans owned by Freddie Mac.

62.     As designated counsel, Defendant had knowledge of Freddie Mac's foreclosure policies and procedures as outlined in its Guide and subsequent directives and further agreed to abide by such policies and procedures.

63.     Plaintiffs' Deeds of Trust are in the nature of a contract and are to be construed according to their terms to the extent the terms are not in conflict with the requirements of law.

64.     Because certain Plaintiffs had a Freddie Mac owned loan, additional requirements and procedures must be met prior to a foreclosure sale being authorized. These requirements were incorporated into those Plaintiffs' Deeds of Trust.

---

[2] FED. HOME LOAN MORTG. CORP., SINGLE-FAMILY SELLER/SERVICER GUIDE, *available at* http://www.freddiemac.com/sell/guide/ [hereafter "Freddie Mac's Guide"].

65.    The Deeds of Trust securing Freddie Mac owned loans must be construed in conjunction with Freddie Mac's guidelines, which have the effect of applicable law.

66.    Freddie Mac's Guide provides that "[t]he Servicer must initiate foreclosure in accordance with this chapter *only when there is no viable alternative to foreclosure*." Freddie Mac's Guide, Section 66.1 (emphasis added).

67.    Additionally, Freddie Mac requires that "[t]he foreclosure counsel or trustee must be free from any conflict of interest with the Borrower." Freddie Mac's Guide, Section 66.15.

68.    "Once the Servicer has initiated foreclosure on a Mortgage, the Servicer must work with the foreclosure counsel or trustee and [sic] to identify any viable alternatives to foreclosure . . . ." Freddie Mac's Guide, Section 66.24.

69.    Upon referral to foreclosure counsel or trustee for foreclosures in Virginia, Freddie Mac requires the foreclosure counsel or trustee to receive the original note and copies of the Deed of Trust, among other relevant documents, within two business days of the referral.[3] If it is not received within that time frame, then the foreclosure attorney or trustee is required to submit a request for that documentation to the Servicer, and the servicer is required to provide the necessary documentation within two business days of the request. *See* Freddie Mac's Guide, Section 66.25.

70.    Freddie Mac further provides foreclosure counsel or trustees with another alternative of directly submitting requests for documents to Freddie Mac's document custodian in the event that a servicer is unresponsive. Freddie Mac's Guide, Section 66.20.

71.    In addition, under the Freddie Mac Bulletin 2011-11, the "Servicer must send a written certification to the attorney/trustee **at least seven, but no more than 15 days prior to a**

---

[3] http://www.freddiemac.com/service/msp/exh79_va.html.

**foreclosure sale date**" that there is no payment arrangement or pending alternative to foreclosure offer. (emphasis in original).

72.    As detailed above, the Defendant was required to have possession of the original note within two business days of referral in order to process a foreclosure under the subject Deed of Trust. Freddie Mac requires that all documents needed to comply with applicable law be provided to foreclosure counsel or trustees, which would have included either the original note or a lost note affidavit pursuant to Virginia Code § 55-59.1(B).

73.    Specifically, Virginia Code § 55-59.1(B) provides that the trustee must either possess the original note or a lost note affidavit from the beneficiary that must then be provided to the homeowner.

74.    Defendant had several means of obtaining the note, and upon information and belief, simply chose to misrepresent that the note was unavailable in an effort to speed up the foreclosure process.

75.    Upon information and belief, Defendant was aware of this requirement for Freddie Mac loans, but insisted on instituting foreclosure proceedings against homeowners without obtaining the documents needed to conduct the foreclosure proceedings.

76.    Furthermore, upon information and belief, Defendant systematically proceeds with foreclosure regardless of whether or not it receives written certification from the loan servicers at least seven, but not more than fifteen days prior to a foreclosure sale date that there is no payment arrangement or pending alternative to foreclosure offer.

77.    The Defendant adopted these practices and procedures to speed up the foreclosure process, while blatantly ignoring its duties under the Plaintiffs' Deeds of Trust, the Freddie Mac servicing guidelines incorporated into the Deeds of Trust, and Virginia law.

78.    Defendant claimed that it was appointed substitute trustee under Plaintiffs' Deeds of Trust.

79.    However, at no time did the Defendant actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### FHA Insured Loans Impose Additional Requirements

80.    Congress created the Federal Housing Administration ("FHA") as part of the National Housing Act of 1934. The FHA insures loans made by lenders to qualifying homebuyers. The FHA is part of the Department of Housing and Urban Development ("HUD").

81.    In the case of a default, HUD or FHA insures the full value of qualified mortgages, making such loans risk-free for lenders. Because of this, HUD has identified servicing practices that it considers acceptable for mortgages it insures. It is the intent of HUD that "no mortgagee shall commence foreclosure or acquire title to a property until [the servicing responsibilities... have been followed." 24 C.F.R. § 203.500.

82.    HUD's Handbook on Administration of Insured Home Mortgages describes the Mortgagee Collection Attitude as follows:

> When the mortgagee made the decision to make the mortgage loan, provided it was insurable by HUD or when acquiring the servicing of a mortgage from another mortgagee, at that time it committed itself to assume the added costs and effort required to service those mortgages in accordance with HUD guidelines should they become delinquent.

http://portal.hud.gov/hudportal/HUD?src=/program_offices/administration/hudclips/handbooks/hsgh/4330.1 (Ch. 7-4, p. 89, last viewed Nov. 28, 2012)

83.     All Virginia Deeds of Trust insured by FHA and HUD state that "Lender may, *except as limited by regulations issued by the Secretary [of Housing and Urban Development]*, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ." (emphasis added).

84.     These Deeds of Trust go on to state, "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

85.     HUD regulations require a "face-to-face meeting with the mortgagor, or . . . a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced." 24 C.F.R. § 203.604.

86.     "A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is knows that the mortgagor is not residing in the mortgaged property." 24 C.F.R. § 203.604(d).

87.     In *Mathews v. PHH Mortgage Corp.*, 724 S.E.2d 196 (Va. 2012), the Virginia Supreme Court held that the requirements of 24 C.F.R. § 203.604 are incorporated as conditions precedent to a foreclosure sale under the Deed of Trust.

88.     Neither Plaintiffs' creditors, servicers, the Defendant, nor any other person or entity has complied with the above-alleged regulatory requirements.  No face-to-face meeting has been attempted.

89.     Because the FHA face-to-face meeting condition precedents have not been attempted, let alone accomplished, the Plaintiffs' Deeds of Trust do not authorize foreclosure, nor did they authorize the Defendant to proceed with a foreclose attempt, foreclosure sale or recordation of a Deed of Foreclosure.

90.     The Defendant is aware that the FHA imposes these additional requirements and whether the Plaintiffs' loans were FHA insured. Further, it knew, or at least should have known had it been a neutral or impartial substitute trustee under Plaintiffs' Deeds of Trust, that its mortgage company clients do not comply with this FHA requirement.

91.     However, the Defendant either failed to inquire about the satisfactory completion of such a meeting, or simply purposefully ignored its requirement under Plaintiffs' Deeds of Trust in the attempt to conduct foreclosures at a cheaper cost and with greater speed.

92.     Despite the additional duty imposed on the Defendant by these FHA insured Deeds of Trust, the Defendant systematically breached its fiduciary duty to the Plaintiffs' and the putative class members by proceeding with foreclosure when it is not so authorized.

### VA Insured Loans Impose Additional Requirements

93.     Similarly, the United States Department of Veterans Affairs ("VA") guaranteed loans are insured against loss if the loan goes into default.

94.     Because of this low-risk status and the government's guarantee, the VA expressly incorporated certain provisions and guidelines into the Deed of Trust that requires note holders and servicers to abide by a defined set of regulations and procedures as codified under Title 38 of the United States Code and in regulations issued by the VA.

95.     All Virginia Deeds of Trust insured by the VA state that "the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the

Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations."

96.    These laws and regulations require that the loan-servicing program be maintained in such a way as to assure prompt responses to inquiries from borrowers. In fact, 38 C.F.R. 36.4278(g)(iv) specifically provides that if the holder has not evaluated the financial circumstances of the borrower or obtained a repayment plan from the borrower, then a face-to-face interview or reasonable effort to arrange a meeting is required.

97.    The VA Servicer Guide further provides:

> VA prefers that you first consider loss mitigation options that keep the veteran in their [sic] home. VA requires you to choose the best option for all parties and asks that you consider options as early in the delinquency as possible.
>
>        . . . .
>
> *When alternatives to foreclosure are not possible*, the loan should be referred for foreclosure as quickly as possible. VA encourages you to continue to pursue loss mitigation options even after initiating the foreclosure process. If a loss mitigation option looks promising, *VA would expect you to postpone the foreclosure action.*

VETERANS BENEFITS ADMIN., U.S. DEP'T OF VETERANS AFFAIRS, VA SERVICER GUIDE 72–73 (Version 1.2 July 2009).

98.    The Defendant is aware that the VA imposes these additional requirements and whether the Plaintiffs' loans were VA insured. Further, it knew, or at least should have known had it been a neutral or impartial substitute trustee under Plaintiff's Deed of Trust, that its mortgage company clients do not comply with this VA requirement.

99.    However, the Defendant either failed to inquire about the satisfactory completion of such a meeting, or simply purposefully ignored its requirement under Plaintiff's Deed of Trust in the attempt to conduct foreclosures at a cheaper cost and with greater speed.

100.    Despite the additional duty imposed on the Defendant by this VA insured Deed of Trust, the Defendant systematically breached its fiduciary duty to the Plaintiff by proceeding with foreclosure when it was not so authorized.

### FACTS REGARDING THE NAMED PLAINTIFFS

A.    **Defendant's Specific Conduct Regarding Karen and Phillip Anderson**

101.    Mr. and Mrs. Anderson borrowed $146,000.00 for their mortgage, as evidenced by a promissory note dated September 20, 2004 ("the Note"). The Note was payable to National City Mortgage dba Commonwealth United Mortgage Company ("National City").

102.    The Note was secured by a Deed of Trust dated September 20, 2004 and recorded in the Clerk's office of Circuit Court of Chesterfield County. Plaintiffs' Note and Deed of Trust obligated them to repay National City.

103.    Upon information and belief, PNC Bank acquired the servicing rights of the loan. As servicer, PNC Bank acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

104.    Around 2009, Plaintiffs began experiencing financial hardship and fell behind on their mortgage. In an attempt to avoid foreclosure, Plaintiffs attempted to conduct a short sale of their home. However, they were not able to complete the short sale.

105.    In approximately late 2009 or early 2010, the Defendant began sending various correspondences to Plaintiffs in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct an alleged foreclosure sale. Upon information and belief, the Defendant maintains copies of these letters in its records.

106.    Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home.

107.    Upon information and belief, in its initial correspondence to Plaintiffs and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiffs' and the putative class members' note.

108.    For example, the Defendant identified PNC Bank as the creditor of Plaintiffs' loan.

109.    Upon information and belief, the Defendant also sent Plaintiffs one or more letters providing them with notice of the foreclosure sale and further included a copy of an alleged substitute trustee appointment document.

110.    The Substitution of Trustee document sent to Plaintiffs was dated March 8, 2010 and was subsequently filed in the Chesterfield County Circuit Court.

111.    This document stated that "PNC Mortgage, a division of PNC Bank" was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

112.    Accordingly, at the time that the Substitution of Trustee document was prepared, "PNC Mortgage, a division of PNC Bank" was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

113.    The Substitution of Trustee document stated that "PNC Mortgage, a division of PNC Bank" had appointed the Defendant as substitute trustee. Upon information and belief, this information is false, particularly given that Virginia Code §55-59(9) requires that only the party

secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

114.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiffs' home, by appointing it as substitute trustee.

115.   Plaintiffs' Deed of Trust contains specific provisions for the sale of their Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

116.   Plaintiffs' Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

117.   In section 24, Plaintiffs' Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

118.   Section 22 of Plaintiffs' Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

119.   Plaintiffs' Deed of Trust identifies the Lender of their mortgage as National City. Any authority to appoint a substitute trustee would have to come from National City or a subsequent noteholder, not merely a loan servicer. No such authority appears to exist.

120.   The Substitution of Trustee document was purportedly signed by Teresa S. Clopp, an "authorized officer" of "PNC Mortgage, a division of PNC Bank". The document was

thereafter allegedly notarized. Even after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

121.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

122.    At all times, the Defendant failed to disclose the creditor to whom the debt was owed and the noteholder of their loan in their correspondences to Plaintiffs, and further falsely represented in the substitution of trustee document that "PNC Mortgage, a division of PNC Bank" was the current noteholder of their loan or the entity authorized to appoint a substitute trustee.

123.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Defendant Forecloses on Mr. and Mrs. Anderson's Home

124.    Defendant's correspondence to Plaintiffs stated that their home would be foreclosed and sold unless they paid the entire balance it claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

125.    The foreclosure sale allegedly took place on January 20, 2011 and a deed of foreclosure dated January 20, 2011 ("the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Chesterfield County Circuit Court.

126.    The Deed of Foreclosure stated that the Defendant was the current Substitute Trustee. Upon information and belief, this statement was false.

127.    Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

128.    The Defendant thereafter filed a foreclosure accounting statement with the Circuit Court Commissioner of Accounts for Chesterfield County ("the Accounting Statement").

129.    Upon information and belief, the Defendant made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

130.    Upon information and belief, the Defendant made further misrepresentations to the Commissioner when it submitted the false substitute trustee and deed of foreclosure documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

131.    The Defendant knew or should have known that this and each of the foregoing misrepresentations that it made were false.

132.    As a result of the acts and omissions of the Defendant, the Plaintiffs have suffered actual damages and injury, including but not limited to, emotional distress, mental anguish, and suffering.

**B.    Defendant's Specific Conduct Regarding Julie Bacon**

133.   Ms. Bacon borrowed $504,000.00 for her mortgage, as evidenced by a promissory note dated May 25, 2005 ("the Note"). The Note was payable to SunTrust Mortgage, Inc. ("SunTrust").

134.   The Note was secured by a Deed of Trust dated May 25, 2005 and recorded in the Clerk's office of Circuit Court of Fairfax County.

135.   Plaintiff's Note and Deed of Trust obligated her to repay SunTrust.

136.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

137.   Upon information and belief, Carrington Mortgage Services, LLC ("Carrington") purchased Plaintiff's mortgage loan subsequent to its origination.

138.   SunTrust acquired the servicing rights of Plaintiff's loan. As servicer, SunTrust acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

139.   Around 2012, Plaintiff began experiencing financial hardship and fell behind on her mortgage.

140.   In approximately 2012, the Defendant began sending various correspondences to Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct an alleged foreclosure sale. Upon information and belief, the Defendant maintains copies of these letters in its records.

141.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home.

142.   Upon information and belief, in their initial correspondence to Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

143.   For example, Defendant's correspondence to Plaintiff identified SunTrust as the creditor of Plaintiff's loan.

144.   Upon information and belief, the Defendant also sent Plaintiff one or more letters providing her with notice of the foreclosure sale.

145.   These various letters to Plaintiff and putative class further included an alleged Substitution of Trustee document. Upon information and belief, the Substitution of Trustee document sent to Plaintiff was filed in the Fairfax County Circuit Court.

146.   This document stated that SunTrust Bank was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

147.   Accordingly, at the time that the Substitution of Trustee document was prepared, SunTrust Bank was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

148.   The Substitution of Trustee document stated that SunTrust had appointed the Defendant as substitute trustee. Upon information and belief, this information is false, particularly given that Virginia Code §55-59(9) requires that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

149. The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

150. Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

151. Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

152. In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

153. Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

154. Plaintiff's Deed of Trust identifies the Lender of his mortgage as SunTrust. However, upon information and belief, Carrington owned Plaintiff's loan at the time that it was foreclosed. Therefore, any authority to appoint a substitute trustee would have to come from Carrington, as SunTrust no longer had authority to appoint a substitute trustee under the Deed of Trust. No such authority appears to exist.

155. The Substitution of Trustee document was purportedly signed by Tomar Hill, an "officer" of SunTrust. The document was thereafter allegedly notarized. Even after that, the date

26

on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

156.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

157.    At all times, the Defendant failed to disclose the creditor to whom the debt was owed and the noteholder of her loan in their correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that SunTrust was the current noteholder of her loan or the entity with the authority to appoint a substitute trustee under the Deed of Trust.

158.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

C.    **Defendant's Specific Conduct Regarding Melissa James Bell**

159.    Plaintiff Bell borrowed $166,000.00 in order to finance her home, as evidenced by a promissory note dated October 26, 2005 ("the Note"). The Note was payable to Countrywide Home Loans, Inc. ("Countrywide").

160.    The Note was secured by a Deed of Trust dated October 26, 2005 and recorded in the Clerk's office of the Circuit Court of Virginia Beach.

161.    Plaintiff's Note and Deed of Trust obligated her to repay Countrywide.

162.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

163.   Freddie Mac subsequently acquired ownership of Plaintiff's mortgage.

164.   In accordance with the Deed of Trust, Freddie Mac was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

165.   Plaintiff's loan was thereafter serviced by BAC Home Loans Servicing, L.P. ("BAC"). As a servicer, BAC acted on behalf of the owner of the loan to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

166.   Plaintiff regularly made her payments to BAC until she began to experience financial difficulties.

167.   In late 2010, Plaintiff contacted her mortgage servicer, BAC, in an effort to pursue loss mitigation options and submitted a completed loan modification application. BAC repeatedly told Plaintiff that it had lost her loan modification package and made her resubmit her application several times. BAC continually assured Plaintiff that her home would not be foreclosed upon while she was in the modification process.

168.   Plaintiff never received a response approving or denying her loan modification request until after the alleged foreclosure sale occurred.

169.   In approximately late 2010, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

170.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

171.   Upon information and belief, the Defendant maintains copies of these letters in its records.

172.   The Defendant sent Plaintiff an initial correspondence around late 2010 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

173.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

174.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

175.   In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the actual investor or owner of Plaintiff's and the putative class members' note.

176.   For example, the subject line of the correspondence to Plaintiff stated that the creditor of Plaintiff's loan is BAC. This statement was false.

177.   The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2). *See, e.g., Sparkman v. Zwicker &*

*Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005). *Bourff v. Rubin Lublin, LLC*, No. 10-14618, 674 F.3d 1238; 2012 U.S. App. LEXIS 5613, 2012 WL 971800 (11th Cir. Mar. 15, 2012) (stating "[t]he identity of the "creditor" is a serious matter"); *Shoup v. McCurdy & Candler*, 465 Fed. Appx. 882, 2012 U.S. App. LEXIS 6443 (11th Cir. March 30, 2012).

178.    The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

179.    The Defendant's initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you receive this letter that you want to know the name of the original creditor or if that creditor is different from BAC Home Loans Servicing, L.P., then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

180.    The Defendant failed to disclose to the Plaintiff and the putative class members that her validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

181.    Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

182. The Defendant also sent Plaintiff a correspondence stating:

> Please be advised that Samuel I. White, P.C. is working with BAC Home Loans Servicing, L.P. and Federal Home Loan Corporation to help you keep your home. . . . It is BAC Home Loans Servicing, L.P. and Federal Home Loan Mortgage Corporation's mission to work out a solution to your loan situation. **WE WANT YOU TO BE ABLE TO KEEP YOUR HOME!**

183. Upon information and belief, this was a form letter that the Defendant sent not only to Plaintiff, but to the putative class members as well.

184. This statement was false and misleading, as Defendant was never working with the loan servicer and/or the noteholder to help keep the Plaintiff and the putative class members in their homes. In fact, Defendant was working to foreclose on Plaintiff's and the putative class members' homes, and this statement was misleading in that it confuses consumers about the Defendant's actual role during this process.

185. The Defendant also sent Plaintiff a correspondence stating that "fees" associated with the foreclosure were $4,067.29, despite the fact that Freddie Mac caps foreclosure fees at $650.

186. Defendant knew or should have known that this and each of the foregoing misrepresentations it made was false.

187. Upon information and belief, the various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

188. The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated October 6, 2010 and was subsequently filed in the Virginia Beach Circuit Court.

189. This document stated that BAC was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

190.    The Substitution of Trustee document stated that BAC had appointed the Defendant as Substitute Trustee.

191.    Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing the Defendant as Substitute Trustee.

192.    Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

193.    Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

194.    In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

195.    Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

196.    Plaintiff's Deed of Trust identifies the Lender of her mortgage as Countrywide.

197.    However, upon information and belief, Freddie Mac was the Noteholder at the time the Substitution of Trustee document was created.

198.    Upon information and belief, at the time that the Substitution of Trustee document was prepared, BAC was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

199.    BAC possessed no authority to appoint a Substitute Trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the Deed of Trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a Substitute Trustee.

200.    The Substitution of Trustee document was purportedly signed by Defendant's employee, Karla Sickerott, an alleged "Attorney in Fact" for BAC Loans Servicing, L.P. Therefore, the Defendant essentially attempted to appoint itself as substitute trustee.

201.    The document was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that all of the dates would match.

202.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.    Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

203.    The Defendant failed to disclose that Freddie Mac was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the Substitution of Trustee document that BAC was the current Noteholder of Plaintiff's loan or the entity with authority to appoint a substitute trustee.

204.    Additionally, upon information and belief, the Defendant did not receive any certification from BAC to proceed with foreclosure because the Plaintiff was still under review for a loan modification prior to the foreclosure sale.

205.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Defendant Forecloses on Ms. Bell's Home

206.    Defendant's correspondence to Plaintiff stated that her home would be foreclosed and sold unless she paid the entire balance it claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

207.    The foreclosure sale allegedly took place on April 20, 2011 and a Deed of Foreclosure dated April 20, 2011 ("the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Virginia Beach Circuit Court on May 27, 2011.

208.    The Deed of Foreclosure stated that Defendant was the Substitute Trustee at the time the document was prepared. Upon information and belief, this statement was false.

209.    Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

210.    Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

211.    The Trustee failed to deliver the Deed of Foreclosure conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

212.   Upon information and belief, the Defendant thereafter filed a foreclosure accounting statement with the Virginia Beach Circuit Court's Commissioner of Accounts.

213.   Upon information and belief, the Defendant made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

214.   Defendant made further misrepresentations to the Commissioner when it submitted the false Substitute Trustee and Deed of Foreclosure documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

215.   The Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

216.   As a result of the acts and omissions of the Defendant, the Plaintiff has suffered actual damages and injury, including but not limited to, the loss of her home, emotional distress, mental anguish, and suffering.

**D.      Defendant's Specific Conduct Regarding Sandra Berrios**

217.   Plaintiff Berrios borrowed $312,000 in order to finance her home, as evidenced by a promissory note dated September 19, 2006 ("the Note"). The Note was payable to 1st Principle Mortgage, LLC. ("1st Principle").

218.   The Note was secured by a Deed of Trust dated September 19, 2006 and recorded in the Clerk's office of the Circuit Court for Fairfax County.

219.   Plaintiff's Note and Deed of Trust obligated her to repay 1st Principle.

220.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

221.   At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of her loan.

222.   In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

223.   Plaintiff's loan was thereafter serviced by Flagstar Bank, FSB ("Flagstar"). As a servicer, Flagstar acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

224.   Plaintiff regularly made her payments to Flagstar until she began to experience financial difficulties.

225.   Around 2009, Plaintiff contacted her mortgage servicer, Flagstar, in an effort to pursue loss mitigation options and submitted a completed loan modification application. She was approved for a loan modification in September 2009. After being approved for the modification, Plaintiff made all of her payments on time.

226.   Despite never missing a mortgage payment after her loan modification was approved, in approximately early to mid-2011, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

227.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

228.   Upon information and belief, the Defendant maintains copies of these letters in its records.

229.   The Defendant sent Plaintiff an initial correspondence around May 2011 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

230.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

231.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

232.   In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

233.   For example, the correspondence to Plaintiff stated that the creditor of Plaintiff's loan is Flagstar. This statement was false.

234.   The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2). *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005). Instead, in its initial and subsequent correspondence to the Plaintiff, the Defendant identified both the creditor and the servicer as Flagstar.

235.    The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

236.    Upon information and belief, the Defendant's initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you received this letter that you want to know the name of the original creditor if that creditor is different from Flagstar Bank, FSB, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

237.    The Defendant failed to disclose to the Plaintiff and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

238.    Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

239.    The correspondence from Defendant to the Plaintiff and the putative class members further demonstrates that one or more of the Defendant's statements were false.

240.    Flagstar was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, Flagstar is merely the collection servicer

38

of Plaintiff's mortgage loan for Fannie Mae, despite the Defendant's initial and subsequent correspondence indicating otherwise.

241.   Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

242.   **Defendant's Specific Conduct Regarding Neil and Jennifer Bradbury**

243.   Plaintiffs Neil and Jennifer Bradbury borrowed $284,905.00 for their mortgage, as evidenced by a promissory note dated December 29, 2006 ("the Note"). The Note was payable to Prosperity Mortgage Company ("Prosperity").

244.   The Note was secured by a Deed of Trust dated December 29, 2006 and recorded in the Clerk's office of Circuit Court for Spotsylvania County. Plaintiffs' Note and Deed of Trust obligated them to repay Prosperity.

245.   Upon information and belief, Wells Fargo acquired the servicing rights of the loan. As servicer, Wells Fargo acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

246.   Around October 2010, Plaintiffs began experiencing financial hardship when Mr. Bradbury lost his job so contacted their loan servicer, Wells Fargo, for assistance.

247.   Plaintiffs sought a loan modification, but Wells Fargo told them that their loan must first be ninety days delinquent before they can apply for a modification.

248.   Relying on this information, Plaintiffs waited until they had missed three payments approximately between November 2010 through January 2011 before they submitted their loan modification paperwork.

249.    However, Wells Fargo put them in foreclosure immediately, and it took Plaintiffs several months before they were able to get their loan out of foreclosure.

250.    Plaintiffs obtained a three-month modification around March 2011, under which they satisfied all payments.  At the end of their modification, Mr. Bradbury was still out of work, so Plaintiffs sought another modification and submitted all of the paperwork again around June 2011.

251.    At this point, Wells Fargo continually lost the paperwork and over the next year or so, Plaintiffs went back and forth with Wells Fargo, repeatedly submitting and resubmitting documents.

252.    During this whole process, Plaintiffs were receiving notices of scheduled foreclosure sales from the Defendant.

253.    In approximately early 2011, the Defendant began sending various correspondences to Plaintiffs in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct an alleged foreclosure sale. Upon information and belief, the Defendant maintains copies of these letters in its records.

254.    Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home.

255.    Upon information and belief, in their initial and subsequent correspondences to Plaintiffs and the putative class members, the Defendant identified the relevant loan servicers, Wells Fargo in the Plaintiffs' case, as the creditor to whom the debt is owed, rather than the actual investor or owner of Plaintiffs' and the putative class members' note.

256.    The Defendant also sent Plaintiffs several letters providing them with notices of scheduled foreclosure sales and attempted to conduct approximately five sales while Plaintiffs were working with their servicer to first obtain a loan modification and then when that seemed impossible, to obtain approval of a short sale.

257.    The correspondences from the Defendant to the Plaintiffs and the putative class members demonstrates that one or more of the Defendant's statements were false in that they misrepresented the owner of Plaintiffs' loan.

258.    Plaintiffs' Deed of Trust contains specific provisions for the sale of their Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

259.    Plaintiffs' Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

260.    Section 22 of Plaintiffs' Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

261.    Defendant identified the creditor and servicer of Plaintiffs' loan as Wells Fargo.

262.    In short - at no time did the Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

263.    As a result of the Defendant's actions, Plaintiffs were forced to sell their home in a short sale in August 2011 rather than face another foreclosure attempt by the Defendant.

264.   Further, Plaintiffs suffered a substantial amount of foreclosure fees from the alleged foreclosure sales. The approximately five scheduled foreclosure sales that Defendant attempted resulted in a significant amount of fees that Plaintiffs were required to pay at the closing of their short sale.

### E.   Defendant's Specific Conduct Regarding Jan Brown

265.   Plaintiff Brown borrowed $500,000.00 in order to finance his home, as evidenced by a promissory note dated September 30, 2004 ("the Note"). The Note was payable to GreenPoint Mortgage Funding, Inc. ("GreenPoint").

266.   The Note was secured by a Deed of Trust dated September 30, 2004 and recorded in the Clerk's office of the Circuit Court for Fairfax County.

267.   Plaintiff's Note and Deed of Trust obligated him to repay GreenPoint.

268.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

269.   Upon information and belief, UBS Warburg Real Estate Securities Inc. ("UBS") acquired Plaintiff's mortgage and became the owner of his loan.

270.   Sometime after the purchase of his home, BAC Home Loans Servicing, LP ("BAC") became the servicer of Plaintiff's loan. As a servicer, BAC acted on behalf of the owner of the loan, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

271.   Plaintiff regularly made his payments to BAC until he began to experience financial difficulties.

272.   Despite being under review for a loan modification, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

273.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

274.   Upon information and belief, the Defendant maintains copies of these letters in its records.

275.   The Defendant sent Plaintiff an initial correspondence on or around September 11, 2012 stating that Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

276.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

277.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

278.   In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identified the relevant loan servicer as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

43

279.    For example, the correspondence to Plaintiff stated that the creditor of Plaintiff's loan was BAC. This statement was false.

280.    The Defendant failed to disclose to Plaintiff the actual creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff. Instead, Defendant falsely represented that BAC was the current creditor and servicer of Plaintiff's loan.

281.    Additionally, the Defendant listed an incorrect amount as due to the "creditor".

282.    The Defendant therefore failed to accurately identify the creditor to whom the debt is owed and the amount of the debt as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g.,* *Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

283.    Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members identifies the actual creditor as required by the FDCPA.

284.    The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

285.    The Substitution of Trustee document that the Defendant sent to the Plaintiff on October 25, 2012 was undated and was subsequently filed in the Fairfax Circuit Court on November 29, 2012.

286.    This document stated that "The Bank of New York Mellon FKA The Bank of New York, as Successor Trustee to JP Morgan Chase Bank N.A., as Trustee for the CerificateHolders [sic] for the Mastr [sic] Adjustable Rate Mortgages Trust 2004-14, Mortgage Pass-Through Certificates, Series 2004-14" was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

287. The Substitution of Trustee document stated that "The Bank of New York Mellon FKA The Bank of New York, as Successor Trustee to JP Morgan Chase Bank N.A., as Trustee for the CerificateHolders [sic] for the Mastr [sic] Adjustable Rate Mortgages Trust 2004-14, Mortgage Pass-Through Certificates, Series 2004-14" had appointed the Defendant as substitute trustee.

288. This document was allegedly signed by Tametka Moore, "Assistant Vice President" on behalf of Bank of America N.A., who in turn claimed to be the "Attorney in Fact" for ""The Bank of New York Mellon FKA The Bank of New York, as Successor Trustee to JP Morgan Chase Bank N.A., as Trustee for the CerificateHolders [sic] for the Mastr [sic] Adjustable Rate Mortgages Trust 2004-14, Mortgage Pass-Through Certificates, Series 2004-14".

289. Essentially, BAC, the servicer of Plaintiff's loan, is the entity attempting to appoint the substitute trustee.

290. The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

291. Plaintiff's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

292. Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

45

293.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

294.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

295.   Plaintiff's Deed of Trust identifies the Lender of his mortgage as GreenPoint.

296.   However, upon information and belief, USB was the Noteholder at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, BAC was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

297.   Therefore, BAC possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

298.   The Substitution of Trustee document was thereafter allegedly notarized.

299.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

300.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

301.   On November 1, 2012, Plaintiff's counsel sent correspondence to the Defendant disputing the amount of the debt it claimed due as well as the identity of the creditor to whom the debt is owed and requested verification of the same. Plaintiff, through his counsel, also requested an itemized reinstatement quote and payoff statement.

302.   In this same letter, Plaintiff, by counsel, provided notice to the Defendant that Plaintiff was currently pursuing a loan modification with his servicer and requested that the foreclosure sale be cancelled pending review of his loan modification.

303.   The Defendant responded to Plaintiff's counsel in a letter dated November 8, 2012, and stated that it had "verified the debt as due and owing".

304.   On or around November 26, 2012, Defendant sent Plaintiff's counsel another notice of a foreclosure sale set for December 13, 2012 with a copy of the alleged substitute trustee document.

305.   Plaintiff Brown is still actively seeking and is currently under review for a loan modification despite the Defendant's continued attempts to foreclose on his home without authority to do so.

**F.     Defendant's Specific Conduct Regarding Vivian Brown**

306.   Plaintiff Brown borrowed $118,875.00 in order to finance her home, as evidenced by a promissory note dated October 3, 2005 ("the Note"). The Note was payable to Bank of America, N.A. ("BOA").

307.   The Note was secured by a Deed of Trust dated October 3, 2005 and recorded in the Clerk's office of the Circuit Court for the City of Chesapeake.

308.   Plaintiff's Note and Deed of Trust obligated her to repay BOA.

309.   At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of her loan.

310.   In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

311.   BOA retained the servicing rights to Plaintiff's loan, although it no longer owned the loan. As a servicer, BOA acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

312.   Plaintiff regularly made her payments to BOA until she began to experience financial difficulties.

313.   In April of 2009, Ms. Brown requested information from BOA to modify or refinance her loan.  In June of 2009, she was granted Fannie Mae Homesaver Forbearance, the duration of which to be six months. During the July through December 2009 forbearance period, Ms. Brown made every payment in full and on time.

314.   At end of the forbearance period, Ms. Brown diligently contacted BOA numerous times seeking to refinance or modify her loan.  However, her inquiries went unanswered as she was informed that an analyst had not been assigned yet.

315.   During that period, Ms. Brown received a payment coupon book reflecting that her payments had changed from approximately $711.00 to over $2000.00 per month.

316.   Ms. Brown contacted BOA and was told an analyst had been assigned but she was not allowed to contact them directly.

317.   Thereafter, Ms. Brown received several more coupon books, all with different monthly payment amounts. However, because she could not get an answer from BOA, she continued to make monthly payments at the trial payment rate.

318.   Despite numerous contacts by Ms. Brown to BOA, she was informed that her case was closed in February of 2010 because BOA allegedly could not reach her, which was untrue.

319.   In March of 2010, Ms. Brown requested a package to apply for HAMP Loan Modification, and BOA informed her that the application package would come within three weeks.

320.   After many weeks of confusion on the part of BOA, Ms. Brown finally received a loan modification package in May of 2010. In mid-June 2010, Plaintiff received another four sets of loan modification packages.

321.   Ms. Brown immediately completed the HAMP loan modification application and returned it to BOA, after which time she was in constant contact with BOA responding to their requests for more information. This process went on for months.

322.   Despite that Plaintiff was still under review for a HAMP loan modification, on or around February 17, 2011, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

323.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

324. Upon information and belief, the Defendant maintains copies of these letters in its records.

325. The Defendant sent Plaintiff an initial correspondence dated February 17, 2011 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

326. The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

327. The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

328. In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

329. For example, the subject line of the February 17, 2011 correspondence to Plaintiff stated that the creditor and servicer of Plaintiff's loan is BAC Home Loans Servicing, LP ("BAC"). This statement was false.

330. The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2). *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

331.   The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

332.   The Defendant's initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you received this letter that you want to know the name of the original creditor if that creditor is different from BAC Home Loans Servicing, L.P. fka Countrywide Home Loans, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

333.   The Defendant failed to disclose to the Plaintiff and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

334.   Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

335.   Plaintiff thereafter sent written correspondence disputing the debt and requesting verification of the debt.

336.   On or around April 8, 2011, Defendant's responded to Plaintiff's request for verification of the indebtedness that it claimed was due.

337.    In that letter the Defendant stated that the "Noteholder" and "Servicer" of her loan was BAC. Upon information and belief, this statement was false. The Defendant never referenced that Fannie Mae was the owner of Plaintiff's loan.

338.    The Defendant sent another correspondence to Plaintiff dated April 25, 2011 that stated the following:

> Samuel I. White, P.C. is working with BAC Home Loans Servicing, L.P. to help you keep your home. . . . It is BAC Home Loans Servicing, L.P.'s mission to attempt to work out a solution to your loan situation, and they have asked us to open a line of communication with you. **WE WANT YOU TO BE ABLE TO KEEP YOUR HOME!**

339.    Upon information and belief, this was a form letter that the Defendant sent not only to Plaintiff, but to the putative class members as well.

340.    This statement was materially misleading, as the Defendant was never working with the loan servicer to help keep the Plaintiff and the putative class members in their homes. In fact, the Defendant was working to foreclose on the Plaintiff's and the putative class members' homes, and therefore misled consumers about its role during the foreclosure process.

341.    The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

342.    On or around May 4, 2011, Defendant sent Plaintiff correspondence that contained a notice of a foreclosure sale set for June 1, 2011 at 9:30am. The Plaintiff was still under review for a loan modification.

343.    The correspondence also contained the alleged Substitution of Trustee document dated February 22, 2011 that was filed in the Circuit Court for the City of Chesapeake on May 16, 2011.

344.   This document stated that BAC was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

345.   The Substitution of Trustee document stated that BAC had appointed the Defendant as substitute trustee.

346.   Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing the Defendant as substitute trustee.

347.   Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

348.   Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

349.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

350.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

351.   Plaintiff's Deed of Trust identifies the Lender of her mortgage as BOA.

352.   However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created.

353.    Therefore, at the time that the Substitution of Trustee document was prepared, neither BOA nor BAC were secured by the Deed of Trust, nor did they hold more than 50% of the monetary obligations secured thereby.

354.    BAC possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

355.    The Substitution of Trustee document was purportedly signed by one of Defendant's employees, Karla Sickerott, as "Attorney in Fact" for BAC. Therefore, the Defendant essentially attempted to appoint itself as substitute trustee.

356.    The document was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that all of the dates would match.

357.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

358.    At all times, the Defendant failed to disclose that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that BAC was the current Noteholder of Plaintiff's loan or was authorized to appoint a substitute trustee.

359.   Additionally, upon information and belief, the Defendant did not receive any certification from BAC to proceed with foreclosure because the Plaintiff was still under review for a loan modification prior to the foreclosure sale.

360.   Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

361.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Defendant Forecloses on Ms. Brown's Home

362.   In April 2011, a BOA representative notified Plaintiff over the phone that her loan modification application would be denied because she failed to provide the requested documentation. However, Plaintiff provided proof of delivery through FedEx tracking, and BOA placed her loan modification back into active review.

363.   Defendant continued its threats of foreclosure.

364.   Because of Defendant's threats of foreclosure during this entire process, Plaintiff filed for bankruptcy in May 2011, believing it was the only way she could keep from losing her home to foreclosure.

365.   In December 2011, the Defendant again informed Plaintiff that it was going to foreclose on January 9, 2012 on behalf of someone other than Fannie Mae, the actual owner of her loan.

366.   Plaintiff filed a motion for temporary injunction in Chesapeake Circuit Court, which was granted together with a $2,500.00 bond.

367.   That same day, Robin Porter from BOA's "Office of the President" contacted Plaintiff and stated that she had already submitted a request for a postponement of the

foreclosure sale to Fannie Mae, the investor on Ms. Brown's loan. The call ended with the reinforcement that the decision for the foreclosure postponement was entirely made by Fannie Mae

368.    After many more communications with Ms. Porter as well as Lynn Dunn at BOA, Ms. Brown was told that her loan modification was being reviewed.  Despite being assured that her loan was again being considered for a modification, she received a notice from the Defendant on February 28, 2012 informing her that a foreclosure sale would occur on March 13, 2012.

369.    On March 5, 2012, Ms. Brown was informed that her modification application was not submitted for underwriting by Fannie Mae because a foreclosure sale was scheduled to be in less than thirty days.

370.    The foreclosure sale allegedly took place on March 13, 2012 and Defendant filed a Deed of Foreclosure dated the same in the Circuit Court for the City of Chesapeake on March 29, 2012.

371.    The Deed of Foreclosure stated that Defendant was the substitute trustee at the time the document was prepared. Upon information and belief, this statement was false.

372.    Defendant conducted this alleged foreclosure sale without authority or right, and therefore violated the FDCPA and its duties as a fiduciary under Plaintiff's Deed of Trust.

373.    As a result of the acts and omissions of the Defendant, the Plaintiff has suffered actual damages and injury, including but not limited to, the loss of her home, emotional distress, mental anguish, and suffering.

G.    **Defendant's Specific Conduct Regarding Jonathan Cobia**

374.   Mr. Cobia borrowed $169,569.00 for his mortgage, as evidenced by a promissory note dated May 29, 2009 ("the Note"). The Note was payable to National City Mortgage, a division of National City Bank ("National City").

375.   The Note was secured by a Deed of Trust dated May 29, 2009 (the "Deed of Trust") and recorded in the Clerk's office of the Portsmouth Circuit Court.

376.   Plaintiff's Note and Deed of Trust obligated him to repay National City.

377.   Upon information and belief, PNC Mortgage, a division of PNC Bank ("PNC") became the servicer of Plaintiff's loan. As servicer, PNC acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

378.   Plaintiff's mortgage loan was a U.S. Department of Veterans Affairs ("VA") guaranteed loan, and as such is insured against loss if the loan goes into default.

379.   Around 2010, Plaintiff began experiencing financial hardship and fell behind on his mortgage payments.

380.   PNC Mortgage never offered nor made any attempts to arrange a face-to-face interview with the Plaintiff.

381.   In approximately mid-2010, the Defendant began sending various correspondences to Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct an alleged foreclosure sale. Upon information and belief, the Defendant maintains copies of these letters in its records.

382.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and conduct a foreclosure sale.

383.   Upon information and belief, in its initial correspondence to Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

384.   Upon information and belief, the Defendant also sent Plaintiff a letter providing him with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

385.   The correspondence from the Defendant to Plaintiff and the putative class members demonstrates that one or more of the Defendant's statements were false.

386.   The various letters to Plaintiff and putative class further included an alleged Substitution of Trustee document dated June 30, 2010, which was subsequently filed in the Portsmouth Circuit Court on August 12, 2010.

387.   This document stated that "PNC Mortgage, a division of PNC Bank NA" was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

388.   The Substitution of Trustee document stated that PNC had appointed the Defendant as Substitute Trustee.

389.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing the Defendant as Substitute Trustee.

390.   Plaintiff's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note, this Security Instrument, and Applicable

58

Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

391.    Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

392.    In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

393.    Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

394.    Plaintiff's Deed of Trust identifies the Lender of his mortgage as National City. Therefore any authority to appoint a Substitute Trustee would have to come from National City or a subsequent noteholder, not merely a loan servicer. No such authority appears to exist.

395.    The Substitution of Trustee document was purportedly signed by Kaycee M. Kleehamer, an "authorized officer" of "PNC Mortgage, a division of PNC Bank, NA", the purported creditor of Plaintiff's loan. Upon information and belief, PNC was not the noteholder of Plaintiff's loan.

396.    Further, at the time that the Substitution of Trustee document was prepared, PNC was not the party secured by the Deed of Trust, nor did it hold greater than 50% of the monetary obligations secured by the Deed of Trust.

397.    Therefore, this document was defective, particularly given that Virginia Code §55-59(9) requires that only the party secured by the Deed of Trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a Substitute Trustee.

398.   The document was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

399.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

400.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

401.   Further, the Defendant had access to a copy of the Deed of Trust and knew or should have known that Plaintiff's loan was a VA loan and the noteholder was required to comply with Title 38 of the United States Code and Regulations implemented by the VA, as they were expressly incorporated into Plaintiff's Deed of Trust.

402.   Because of this, the Defendant, as fiduciary, had a duty to ensure that these requirements were followed prior to the acceleration of the mortgage loan that was subject to the Deed of Trust.

403.   Specifically, the Deed of Trust states: "the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations."

404.    Despite this express mandate in the Deed of Trust, prior to conducting the foreclosure sale, the Defendant did not require *any* documents from the lender, servicer or noteholder confirming that Title 38 or the relevant regulations were followed.

405.    To the extent that the Defendant was allegedly appointed substitute trustee, it had a fiduciary duty under the Deed of Trust to ensure that the prerequisites to acceleration and foreclosure were followed.

406.    The Defendant breached this duty to Plaintiff and the putative class members.

*Defendant Forecloses on Mr. Cobia's Home*

407.    Defendant's correspondence to Plaintiff stated that his home would be foreclosed and sold unless he paid the entire balance they claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

408.    The foreclosure sale allegedly took place on August 24, 2010 and a Deed of Foreclosure dated August 24, 2010 ("the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Portsmouth Circuit Court on January 25, 2012.

409.    The Deed of Foreclosure stated that PNC was the current Noteholder and the Defendant was the current Substitute Trustee. Upon information and belief, these statements were false.

410.    Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

411.   Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

412.   The Trustee failed to deliver the Deed of Foreclosure conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

413.   Upon information and belief, the Defendant thereafter filed a foreclosure accounting statement with the Circuit Court Commissioner of Accounts for Portsmouth ("the Accounting Statement").

414.   Upon information and belief, the Defendant made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

415.   Upon information and belief, the Defendant made further misrepresentations to the Commissioner when it submitted the false Substitute Trustee and Deed of Foreclosure documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

416.   The Defendant knew or should have known that this and each of the foregoing misrepresentations that it made were false.

417.   As a result of the acts and omissions of the Defendant, Plaintiff has suffered actual damages and injury, including but not limited to, emotional distress, mental anguish, the loss of his home, and suffering.

### H.   Defendant's Specific Conduct Regarding Yenenesh Detsa

418.   Plaintiff Detsa borrowed $287,200.00 in order to finance her home, as evidenced by a promissory note dated March 28, 2005 ("the Note"). The Note was payable to Home Mortgage Resources, LLC. ("Home Mortgage").

419.   The Note was secured by a Deed of Trust dated March 28, 2005 and recorded in the Clerk's office of the Circuit Court for Prince William County.

420.   Plaintiff's Note and Deed of Trust obligated her to repay Home Mortgage.

421.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

422.   At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of her loan.

423.   In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

424.   Plaintiff's loan was thereafter serviced by Bank of America, N.A. ("Bank of America"). As a servicer, Bank of America acted on behalf of the owner of the loan to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

425.   Plaintiff regularly made her payments to Bank of America until she began to experience financial difficulties and fell behind on her mortgage.

426.   In approximately late 2011 or early 2012, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

427.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these

form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

428.   Upon information and belief, the Defendant maintains copies of these letters in its records.

429.   Defendant sent Plaintiff an initial correspondence around late 2011 or early 2012 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

430.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

431.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

432.   Upon information and belief, in its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

433.   For example, the Defendant identified Plaintiff's creditor as Bank of America.

434.   The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).   *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

435.   The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

436.   Upon information and belief, the Defendant's initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you received this letter that you want to know the name of the original creditor if that creditor is different from Bank of America, N.A., then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

437.   Upon information and belief, the Defendant failed to disclose to the Plaintiff and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

438.   Upon information and belief, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

439.   Upon information and belief, the Defendant also sent Plaintiff at least one letter providing her with notice of the foreclosure sale and included a copy of the alleged substitute trustee appointment document.

440.  Bank of America was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, Bank of America is merely the collection servicer of Plaintiff's mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

441.  Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

442.  Upon information and belief, the various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

443.  The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated April 30, 2012 and was subsequently filed in the Prince William Circuit Court.

444.  This document stated that Bank of America was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

445.  The Substitution of Trustee document stated that Bank of America had appointed the Defendant as substitute trustee.

446.  The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

447.  Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

448.   Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

449.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

450.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

451.   Plaintiff's Deed of Trust identifies the Lender of her mortgage as Home Mortgage.

452.   However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, Bank of America was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

453.   Therefore, Bank of America possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

454.   The Substitution of Trustee document was purportedly signed by Katheryn Ryan an "attorney in fact" for Bank of America, the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

67

455.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

456.    At all times relevant hereto, the Defendant failed to disclose to Plaintiff that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that Bank of America was the current Noteholder of Plaintiff's loan or was authorized to appoint a substitute trustee under the Deed of Trust.

457.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

**I.    Defendant's Specific Conduct Regarding Charlotte Emmanuel**

458.    Plaintiff Emmanuel borrowed $322,650.00 in order to finance her home, as evidenced by a promissory note dated December 20, 2006 ("the Note"). The Note was payable to Premier Mortgage Company, LLC ("Premier").

459.    The Note was secured by a Deed of Trust dated December 20, 2006 and recorded in the Clerk's office of the Circuit Court of Prince William County.

460.    Plaintiff's Note and Deed of Trust obligated her to repay Premier.

461.    The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

462.   Freddie Mac subsequently acquired ownership of Plaintiff's mortgage.

463.   In accordance with the Deed of Trust, Freddie Mac was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

464.   Plaintiff's loan was thereafter serviced by Bank of America, N.A. ("Bank of America"). As a servicer, Bank of America acted on behalf of the owner of the loan to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

465.   Plaintiff lost her job in 2008. Despite her loss of income, Plaintiff made her mortgage payments using all of her savings. During this time, she applied for a loan modification.

466.   In approximately 2009, Plaintiff entered into a trial period. She made all of her trial period payments. Bank of America sent Plaintiff a letter in March 2010 stating that she had been approved for a permanent modification. This letter stated that she would receive her permanent modification documents shortly.

467.   Plaintiff made her modified payments while waiting for this documentation to arrive. When she did not receive the documents, Plaintiff placed several calls to Bank of America. Each time she called, a representative assured her that she would receive her permanent modification shortly.

468.   In early 2011, Plaintiff received a letter from Bank of America stating that it had made a mistake and that she had been denied for a loan modification. The letter also stated that Plaintiff must immediately pay the difference between her trial plan payment and her prior monthly payment, plus late fees and other charges. Plaintiff could not pay the full amount, so she made partial payments, which Bank of America refused to accept.

469.   In approximately late 2011, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

470.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

471.   Upon information and belief, the Defendant maintains copies of these letters in its records.

472.   The Defendant sent Plaintiff an initial correspondence around November 2011 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

473.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

474.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

475.   In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the actual investor or owner of Plaintiff's and the putative class members' note.

476.     For example, the correspondence to Plaintiff stated that the creditor of Plaintiff's loan is Bank of America. This statement was false.

477.     The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005). *Bourff v. Rubin Lublin, LLC*, No. 10-14618, 674 F.3d 1238; 2012 U.S. App. LEXIS 5613, 2012 WL 971800 (11th Cir. Mar. 15, 2012) (stating "[t]he identity of the "creditor" is a serious matter"); *Shoup v. McCurdy & Candler*, 465 Fed. Appx. 882, 2012 U.S. App. LEXIS 6443 (11th Cir. March 30, 2012).

478.     Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

479.     Instead, the Defendant identified both the creditor and servicer of Plaintiff's loan as Bank of America.

480.     Defendant knew or should have known that this and each of the foregoing misrepresentations it made was false.

481.     Upon information and belief, the various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

482.     The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated November 8, 2011 and was subsequently filed in the Prince William County Circuit Court.

483.     This document stated that Bank of America, N.A. was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

484.   The Substitution of Trustee document stated that Bank of America, N.A. had appointed the Defendant as Substitute Trustee.

485.   Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing the Defendant as Substitute Trustee.

486.   Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

487.   Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

488.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

489.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

490.   Plaintiff's Deed of Trust identifies the Lender of her mortgage as Premier.

491.   However, upon information and belief, Freddie Mac was the Noteholder at the time the Substitution of Trustee document was created.

492.   Upon information and belief, at the time that the Substitution of Trustee document was prepared, Bank of America, N.A. was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

493.    Bank of America, N.A. possessed no authority to appoint a Substitute Trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the Deed of Trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a Substitute Trustee.

494.    The Substitution of Trustee document was purportedly signed by Defendant's employee, Karla K. Sickerott, as "Attorney in Fact" for Bank of America, N.A. Therefore, the Defendant essentially attempted to appoint itself as substitute trustee.

495.    The document was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that all of the dates would match.

496.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

497.    The Defendant failed to disclose that Freddie Mac was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that Bank of America, N.A. was the current Noteholder of Plaintiff's loan.

498.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### *Defendant Forecloses on Ms. Emmanuel's Home*

499.    Defendant's correspondence to Plaintiff stated that her home would be foreclosed and sold unless she paid the entire balance it claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

500.    The foreclosure sale allegedly took place on January 6, 2012 and a deed of foreclosure dated January 6, 2012 ("the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Prince William Circuit Court on January 30, 2012.

501.    The Deed of Foreclosure stated that Defendant was the substitute trustee at the time the document was prepared. Upon information and belief, this statement was false.

502.    Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

503.    Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

504.    The Trustee failed to deliver the Deed of Foreclosure conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

505.    Upon information and belief, the Defendant thereafter filed a foreclosure accounting statement with the Prince William County Circuit Court's Commissioner of Accounts.

506.   Upon information and belief, the Defendant made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

507.   Defendant made further misrepresentations to the Commissioner when it submitted the false Substitute Trustee and Deed of Foreclosure documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

508.   The Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

509.   As a result of the acts and omissions of the Defendant, the Plaintiff has suffered actual damages and injury, including but not limited to, the loss of her home, emotional distress, mental anguish, and suffering.

## J.   Defendant's Specific Conduct Regarding Robin Fortune

510.   Plaintiff Fortune borrowed $214,650.00 in order to finance her home, as evidenced by a promissory note dated December 29, 2005 ("the Note"). The Note was payable to Benchmark Mortgage, Inc. ("Benchmark").

511.   The Note was secured by a Deed of Trust dated December 29, 2005 and recorded in the Clerk's office of the Circuit Court for Chesterfield County.

512.   Plaintiff's Note and Deed of Trust obligated her to repay Benchmark.

513.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

514.   At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of her loan.

515.   In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

516.   Plaintiff's loan was thereafter serviced by BAC Home Loans Servicing, L.P. ("BAC"). As a servicer, BAC acted on behalf of the owner of the loan to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

517.   Plaintiff regularly made her payments to BAC until she began to experience financial difficulties.

518.   Around late 2010 or early 2011, Plaintiff contacted her mortgage servicer, BAC, in an effort to pursue loss mitigation options and submitted a completed loan modification application. While Plaintiff was under review for a loan modification, the Defendant initiated foreclosure proceedings.

519.   In approximately April 2011, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

520.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter threatened a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

521.   Upon information and belief, the Defendant maintains copies of these letters in its records.

522.   The Defendant sent Plaintiff an initial correspondence around April 2011 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

523.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

524.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

525.   In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

526.   For example, the correspondence to Plaintiff stated that the creditor of Plaintiff's loan is BAC. Upon information and belief, this statement was false.

527.   The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

528.   Instead, the Defendant identified both the creditor and the servicer of Plaintiff's loan as BAC.

529.   The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

530.    Upon information and belief, the Defendant's initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you received this letter that you want to know the name of the original creditor if that creditor is different from BAC Home Loans Servicing, LP, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

531.    The Defendant failed to disclose to the Plaintiff and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

532.    Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

533.    BAC was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, BAC was merely the collection servicer of Plaintiff's mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

534.    Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

535.   Upon information and belief, the various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

536.   The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated April 26, 2011 and was subsequently filed in the Chesterfield County Circuit Court.

537.   This document stated that "BAC Home Loans Servicing, LP fka Countywide Home Loans Servicing, LP" was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

538.   The Substitution of Trustee document stated that "BAC Home Loans Servicing, LP fka Countywide Home Loans Servicing, LP" had appointed the Defendant as substitute trustee.

539.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as Substitute Trustee.

540.   Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

541.   Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

542.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

543.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

544.   Plaintiff's Deed of Trust identifies the Lender of her mortgage as Benchmark.

545.   However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, "BAC Home Loans Servicing, LP fka Countywide Home Loans Servicing, LP" was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

546.   Therefore, "BAC Home Loans Servicing, LP fka Countywide Home Loans Servicing, LP" possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a Substitute Trustee.

547.   The Substitution of Trustee document was purportedly signed by Defendant's employee, Karla K. Sickerott, as "attorney in fact" for "BAC Home Loans Servicing, LP fka Countywide Home Loans Servicing, LP". Therefore, the Defendant essentially attempted to appoint itself as substitute trustee.

548.   The document was thereafter allegedly notarized. At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

549.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.    Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

550.    At all times relevant hereto, the Defendant failed to disclose to Plaintiff that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the Substitution of Trustee document that "BAC Home Loans Servicing, LP fka Countywide Home Loans Servicing, LP" was the current Noteholder of Plaintiff's loan or authorized to appoint a substitute trustee.

551.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Defendant Forecloses on Ms. Fortune's Home

552.    Defendant's correspondence to Plaintiff stated that her home would be foreclosed and sold unless she paid the entire balance it claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

553.    The foreclosure sale allegedly took place on September 27, 2011 and a deed of foreclosure dated September 27, 2011 ("the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Chesterfield County Circuit Court.

554.    The Deed of Foreclosure stated that Defendant was the substitute trustee at the time the document was prepared. Upon information and belief, this statement was false.

555.   Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

556.   Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

557.   The Trustee failed to deliver the Deed of Foreclosure conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

558.   Upon information and belief, the Defendant thereafter filed a foreclosure accounting statement with the Chesterfield County Circuit Court's Commissioner of Accounts.

559.   Upon information and belief, the Defendant made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

560.   Defendant made further misrepresentations to the Commissioner when it submitted the false Substitute Trustee and Deed of Foreclosure documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

561.   The Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

562.   As a result of the acts and omissions of the Defendant, the Plaintiff has suffered actual damages and injury, including but not limited to, the loss of her home, emotional distress, mental anguish, and suffering.

**K.     Defendant's Specific Conduct Regarding Harold and Gail Gold**

563.    Plaintiffs Harold and Gail Gold borrowed $276,933.00 in order to finance their home, as evidenced by a promissory note dated June 29, 2007 ("the Note"). The Note was payable to C&F Mortgage Corporation ("C&F").

564.    The Note was secured by a Deed of Trust dated June 29, 2007 and recorded in the Clerk's office of the Circuit Court of Chesterfield County.

565.    Plaintiffs' Note and Deed of Trust obligated them to repay C&F.

566.    The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

567.    Freddie Mac subsequently acquired ownership of Plaintiffs' mortgage.

568.    In accordance with the Deed of Trust, Freddie Mac was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiffs.

569.    At some point, BAC Home Loans Servicing, L.P. ("BAC") became the servicer of Plaintiffs' loan. As a servicer, BAC acted on behalf of the owner of the loan, Freddie Mac, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

570.    Plaintiffs made their payments to BAC until they began to experience financial difficulties due to their home inspection business slowing after the housing market crisis. In early 2010, Plaintiffs sought a HAMP loan modification and submitted a completed application to their loan servicer, BAC.

571.    However, after failing to receive any response from BAC after a period of time, Plaintiffs followed up and learned that BAC had lost their application.

572.    In approximately summer of 2010, the Defendant began sending various correspondences to the Plaintiffs in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

573.    Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiffs, but to the putative class members as well.

574.    Upon information and belief, the Defendant maintains copies of these letters in its records.

575.    Defendant sent Plaintiffs an initial correspondence around June 2010 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiffs' home.

576.    The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

577.    In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the actual investor or owner of Plaintiffs' and the putative class members' note.

578.    For example, the subject line of the correspondence to Plaintiffs stated that the creditor and servicer of Plaintiffs' loan is BAC. This statement was false. Freddie Mac was the owner of Plaintiffs' loan.

579.   The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).   *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).   *Bourff v. Rubin Lublin, LLC*, No. 10-14618, 674 F.3d 1238; 2012 U.S. App. LEXIS 5613, 2012 WL 971800 (11th Cir. Mar. 15, 2012) (stating "[t]he identity of the "creditor" is a serious matter"); *Shoup v. McCurdy & Candler*, 465 Fed. Appx. 882, 2012 U.S. App. LEXIS 6443 (11th Cir. March 30, 2012).

580.   Further, none of Defendant's subsequent letters to the Plaintiffs and the putative class members identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

581.   Defendant knew or should have known that this and each of the foregoing misrepresentations it made was false.

582.   Upon information and belief, the various letters to the Plaintiffs and putative class members further included an alleged Substitution of Trustee document.

583.   The Substitution of Trustee document that Defendant sent to the Plaintiffs was dated July 14, 2010 and was subsequently filed in the Chesterfield County Circuit Court.

584.   This document stated that BAC was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared.   Upon information and belief, this statement was false.

585.   The Substitution of Trustee document stated that BAC had appointed the Defendant as substitute trustee.

586.   Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiffs' home, by appointing the Defendant as substitute trustee.

587.    Plaintiffs' Deed of Trust contains specific provisions for the sale of their Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

588.    Plaintiffs' Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

589.    In section 24, Plaintiffs' Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

590.    Section 22 of Plaintiffs' Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

591.    Plaintiffs' Deed of Trust identifies the Lender of their mortgage as C&F.

592.    However, upon information and belief, Freddie Mac was the Noteholder and owner of the loan at the time the Substitution of Trustee document was created.

593.    Upon information and belief, at the time that the Substitution of Trustee document was prepared, BAC was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

594.    BAC possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

595.   Further, the Substitution of Trustee document was purportedly signed by one of Defendant's employees, Karla K. Sickerott, as "Attorney in Fact" for BAC.   Therefore, the Defendant essentially attempted to appoint itself substitute trustee.

596.   The document was thereafter allegedly notarized. At some point after that, the date on the signature and notary block was filled out, presumably once the first page of the document was created so that all of the dates would match.

597.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

598.   The Defendant failed to disclose that Freddie Mac was the creditor to whom the debt was owed and the Noteholder of Plaintiffs' loan in its correspondences to Plaintiffs, and further falsely represented in the substitution of trustee document that BAC was the current Noteholder of Plaintiff's loan.

599.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### *Defendant Forecloses on Mr. and Mrs. Gold's Home*

600.   Defendant's correspondence to Plaintiffs stated that their home would be foreclosed and sold unless they paid the entire balance it claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

601.    The foreclosure sale allegedly took place on September 28, 2010 and a deed of foreclosure dated the same ("the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Chesterfield Circuit Court on October 8, 2010.

602.    The Deed of Foreclosure stated that Defendant was the substitute trustee at the time the document was prepared. Upon information and belief, this statement was false.

603.    Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

604.    Furthermore, according to Plaintiffs' Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

605.    The Trustee failed to deliver the Deed of Foreclosure conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

606.    This was done to avoid certain fees and taxes.

607.    The Defendant thereafter filed a foreclosure accounting statement with the Chesterfield County Circuit Court's Commissioner of Accounts.

608.    Upon information and belief, the Defendant made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

609.    Defendant made further misrepresentations to the Commissioner when it submitted the false substitute trustee and trustee's deed documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

610.    The Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

611.    As a result of the acts and omissions of the Defendant, Plaintiffs have suffered actual damages and injury, including but not limited to, the loss of their home, emotional distress, mental anguish, and suffering.

**L.    Defendant's Specific Conduct Regarding Robert Hughes, Jr.**

612.    Plaintiff Hughes borrowed $319,200.00 in order to finance his home, as evidenced by a promissory note dated June 2, 2004 ("the Note"). The Note was payable to Everbank.

613.    The Note was secured by a Deed of Trust dated June 2, 2004 and recorded in the Clerk's office of the Circuit Court for Fairfax County.

614.    Plaintiff's Note and Deed of Trust obligated him to repay Everbank.

615.    The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

616.    At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of his loan.

617.    In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

618.    Plaintiff's loan was thereafter serviced by Wells Fargo Home Mortgage ("Wells Fargo"). As a servicer, Wells Fargo acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

619.    Plaintiff regularly made his payments to Wells Fargo until he began to experience financial difficulties and fell behind on his mortgage payments.

620.    Plaintiff contacted his mortgage servicer, Wells Fargo, in an effort to pursue loss mitigation options and submitted a completed loan modification application.

621.    While Plaintiff's loan modification application was under review, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

622.    Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

623.    Upon information and belief, the Defendant maintains copies of these letters in its records.

624.    The Defendant sent Plaintiff an initial correspondence around mid to late 2011 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

625.    The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

626.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

627.   In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

628.   For example, the correspondence to Plaintiff stated that the creditor of Plaintiff's loan is Wells Fargo. This statement was false.

629.   The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).   *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

630.   Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g. Instead, Defendant identified Wells Fargo as the creditor and servicer of Plaintiff's loan.

631.   Wells Fargo was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, Wells Fargo is merely the collection servicer of Plaintiff's mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

632.   The Defendant also sent Plaintiff a correspondence stating "Please be advised that Samuel I. White, P.C. is working with Wells Fargo Home Mortgage to help you keep your home.

. . . It is Wells Fargo Home Mortgage's mission to work out a solution to your loan situation. **WE WANT YOU TO BE ABLE TO KEEP YOUR HOME!**"

633.   Upon information and belief, this was a form letter that the Defendant sent not only to Plaintiff, but to the putative class members as well.

634.   This statement was misleading, as Defendant was never working with the loan servicer and/or the noteholder to help keep the Plaintiff and the putative class members in their homes. In fact, Defendant was working to foreclose on Plaintiff's and the putative class members' homes.

635.   Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

636.   The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

637.   The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated July 19, 2011 and was subsequently filed in the Fairfax Circuit Court.

638.   This document stated that Wells Fargo was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

639.   The Substitution of Trustee document stated that Wells Fargo had appointed the Defendant as substitute trustee.

640.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

641.   Plaintiff's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

642.    Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

643.    In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

644.    Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

645.    Plaintiff's Deed of Trust identifies the Lender of his mortgage as Everbank.

646.    However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, Wells Fargo was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

647.    Therefore, Wells Fargo possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

648.    The Substitution of Trustee document was purportedly signed by Defendant's employee, Karla K. Sickerott, as "attorney in fact" for Wells Fargo.  Therefore, the Defendant essentially attempted to appoint itself as substitute trustee.

649.    The document was thereafter allegedly notarized. At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

650.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

651.    At all times relevant hereto, the Defendant failed to disclose to Plaintiff that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that Wells Fargo Bank, N.A. was the current Noteholder of Plaintiff's loan.

652.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

**M.     Defendant's Specific Conduct Regarding Timothy Kelly**

653.    Plaintiff Kelly borrowed $272,000.00 in order to finance his home, as evidenced by a promissory note dated August 12, 2005 ("the Note"). The Note was payable to E-Loan, Inc.

654.    The Note was secured by a Deed of Trust dated August 12, 2005.

655.    Plaintiff's Note and Deed of Trust obligated him to repay E-Loan, Inc.

94

656.   Freddie Mac subsequently acquired ownership of Plaintiff's mortgage.

657.   In accordance with the Deed of Trust, Freddie Mac was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

658.   Upon information and belief, Plaintiff's loan was thereafter serviced by Bank of America, N.A. ("Bank of America"). As a servicer, Bank of America acted on behalf of the owner of the loan to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

659.   Plaintiff regularly made his payments to Bank of America until he began to experience financial difficulties as a result of the recession's effect on his self-owned business. Despite his loss of income, Plaintiff used his savings, investments and even sold off his unneeded personal assets in order to make his monthly mortgage payments.

660.   During this time, Plaintiff was working with his servicer, Bank of America, in an effort to pursue loss mitigation options and submitted a completed loan modification application. Plaintiff has not yet received an approval or denial of his loan application.

661.   Despite the fact that a modification application is currently under review, in approximately March 2012, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

662.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

663.    Upon information and belief, the Defendant maintains copies of these letters in its records.

664.    The Defendant sent Plaintiff an initial correspondence around March 2012 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

665.    The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

666.    The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

667.    In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the actual investor or owner of Plaintiff's and the putative class members' note.

668.    For example, the subject line of the correspondence to Plaintiff stated that the creditor of Plaintiff's loan is Bank of America. Upon information and belief, this statement was false.

669.    The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).   *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).   *Bourff v. Rubin Lublin, LLC*, No. 10-14618, 674 F.3d 1238; 2012 U.S. App. LEXIS 5613, 2012 WL 971800 (11th Cir. Mar. 15,

2012) (stating "[t]he identity of the "creditor" is a serious matter"); *Shoup v. McCurdy &*

*Candler*, 465 Fed. Appx. 882, 2012 U.S. App. LEXIS 6443 (11th Cir. March 30, 2012).

670.    Further, none of Defendant's subsequent letters to the Plaintiff and the putative

class members actually identifies the actual creditor or provides the proper disclosures as

required by the FDCPA, at 15 U.S.C. § 1692g. Instead, the Defendant identified Bank of

America as both the creditor and the servicer of Plaintiff's loan.

671.    Defendant knew or should have known that this and each of the foregoing

misrepresentations it made was false.

672.    Upon information and belief, the various letters to the Plaintiff and putative class

members further included an alleged Substitution of Trustee document.

673.    Upon information and belief, the Substitution of Trustee document that Defendant

sent to the Plaintiff was subsequently filed in the Fredericksburg Circuit Court.

674.    Upon information and belief, this document stated that Bank of America was the

"present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that

it was prepared. Upon information and belief, this statement was false.

675.    The Substitution of Trustee document stated that Bank of America had appointed

the Defendant as substitute trustee.

676.    Defendant claims that the Substitution of Trustee document gives it the authority

to foreclose on Plaintiff's home, by appointing the Defendant as substitute trustee.

677.    Plaintiff's Deed of Trust contains specific provisions for the sale of his Note and

the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security
> Instrument) can be sold one or more times without prior notice to
> Borrower. A sale might result in a change in the entity (known as the
> "Loan Servicer") that collects Periodic Payments due under the Note and

this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

678.   Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

679.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

680.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

681.   Plaintiff's Deed of Trust identifies the Lender of his mortgage as E-Loan, Inc.

682.   However, upon information and belief, Freddie Mac was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created.

683.   Upon information and belief, at the time that the Substitution of Trustee document was prepared, Bank of America was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

684.   Bank of America possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

685.   The Substitution of Trustee document was purportedly signed by an agent for the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that all of the dates would match.

686.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

687.    Upon information and belief, the Defendant failed to disclose that Freddie Mac was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that Bank of America was the current Noteholder of Plaintiff's loan or had the authority to appoint a substitute trustee.

688.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

**N.     Defendant's Specific Conduct Regarding Ester Lopes**

689.    Plaintiff Lopes borrowed $328,000.00 in order to finance her home, as evidenced by a promissory note dated January 21, 2005 ("the Note"). The Note was payable to Countrywide Home Loans, Inc. ("Countrywide").

690.    The Note was secured by a Deed of Trust dated January 21, 2005 and recorded in the Clerk's office of the Circuit Court for Fairfax County.

691.    Plaintiff's Note and Deed of Trust obligated her to repay Countrywide.

692.    The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

693.    At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of her loan.

694.    In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

695.    Plaintiff's loan was thereafter serviced by Bank of America, N.A. ("Bank of America"). As a servicer, Bank of America acted on behalf of the owner of the loan to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

696.    Plaintiff regularly made her payments to Bank of America until she began to experience financial difficulties and fell behind on her mortgage loan.

697.    During this period, Plaintiff contacted her mortgage servicer, Bank of America, in an effort to pursue loss mitigation options and submitted a completed loan modification application.

698.    While her loan modification application was under review, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

699.    Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

700.    Upon information and belief, the Defendant maintains copies of these letters in its records.

701.    The Defendant sent Plaintiff an initial correspondence around mid-2012 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

702.    The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

703.    The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

704.    Upon information and belief, in its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

705.    The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

706.    Upon information and belief, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

707.    Bank of America was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, Bank of America is merely the

collection servicer of Plaintiff's mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

708. Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

709. The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

710. The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated July 25, 2012 and was subsequently filed in the Fairfax Circuit Court.

711. This document stated that Bank of America was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

712. The Substitution of Trustee document stated that Bank of America had appointed the Defendant as substitute trustee.

713. The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

714. Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

715. Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

716.    In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

717.    Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

718.    Plaintiff's Deed of Trust identifies the Lender of her mortgage as Countrywide.

719.    However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, Bank of America was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

720.    Therefore, Bank of America possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

721.    The Substitution of Trustee document was purportedly signed by Kathryn Ryan, as "attorney in fact" for Bank of America, the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

722.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such

legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

723.   At all times relevant hereto, the Defendant failed to disclose to Plaintiff that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that Bank of America was the current Noteholder of Plaintiff's loan and had authority to appoint a substitute trustee.

724.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

**O.**   **Defendant's Specific Conduct Regarding Lisa Louison**

725.   Plaintiff Louison borrowed $304,455.00 in order to finance her home, as evidenced by a promissory note dated June 21, 2007 ("the Note"). The Note was payable to Bank of America, N.A. ("Bank of America").

726.   The Note was secured by a Deed of Trust dated June 21, 2007 and recorded in the Clerk's office of the Circuit Court for Prince William County.

727.   Plaintiff's Note and Deed of Trust obligated her to repay Bank of America.

728.   At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of her loan.

729.   In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

730.   Plaintiff's loan was thereafter serviced by Bank of America. As a servicer, Bank of America acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary

servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

731.   Plaintiff regularly made her payments to Bank of America until she began to experience financial difficulties due to her loss of employment.

732.   Despite her loss of income, Plaintiff used her savings to pay her monthly mortgage. She did not miss any of her monthly payments. However, upon information and belief, Bank of America started an escrow account without providing any notice to Plaintiff (as required in her Note) and despite her timely payments.

733.   In 2009, Plaintiff contacted her mortgage servicer, Bank of America, in an effort to pursue loss mitigation options and submitted a completed loan modification application. While her application was under review, Bank of America required that Plaintiff resubmit the same documents several times. Despite her cooperation with Bank of America during this time, she was met with hostility and resistance and was threatened with foreclosure.

734.   In late 2011 or early 2012, Defendant began its attempts to foreclose on Plaintiff's home.

735.   Defendant prepared a Substitution of Trustee document that was dated April 5, 2012 and was filed in the Prince William Circuit Court on April 12, 2012.

736.   This document stated that Bank of America was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

737.   The Substitution of Trustee document stated that Bank of America had appointed the Defendant as substitute trustee.

738.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

739.   Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

740.   Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

741.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

742.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

743.   Plaintiff's Deed of Trust identifies the Lender of her mortgage as Bank of America.

744.   However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, Bank of America was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

745.    Therefore, Bank of America possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

746.    The Substitution of Trustee document was purportedly signed by Defendant's employee, Karla K, Sickerott, as "attorney in fact" for Bank of America.  Therefore, Defendant essentially attempted to appoint itself as substitute trustee.

747.    The document was thereafter allegedly notarized. At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

748.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.    Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

749.    At all times relevant hereto, the Defendant failed to disclose to Plaintiff that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that Flagstar was the current Noteholder of Plaintiff's loan.

750.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

**P.**    **Defendant's Specific Conduct Regarding Jean Mariner and Jean DuBrey**

751.   Plaintiffs Mariner and DuBrey borrowed $156,800.00 in order to finance their home, as evidenced by a promissory note dated March 13, 2008 ("the Note"). The Note was payable to Myers Park Mortgage, Inc. ("Myers Park").

752.   The Note was secured by a Deed of Trust dated March 13, 2008 and recorded in the Clerk's office of the Hampton Circuit Court.

753.   Plaintiffs' Note and Deed of Trust obligated them to repay Myers Park.

754.   At some point, Fannie Mae acquired Plaintiffs' mortgage and became the owner of their loan.

755.   In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiffs.

756.   Plaintiffs' loan was thereafter serviced by BAC Home Loans Servicing, L.P. ("BAC"). As a servicer, BAC acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

757.   Plaintiffs regularly made their payments to BAC until they began to experience financial difficulties.

758.   Around late 2010 or 2011, Plaintiffs contacted their mortgage servicer, BAC, in an effort to pursue loss mitigation options and submitted a completed loan modification application. After receiving their application, BAC requested additional documentation from the Plaintiffs and assured them that a foreclosure would not occur while their loan modification application was under review. Despite this promise, BAC initiated foreclosure proceedings before approving or denying Plaintiffs' application.

759.    In   approximately   late   2010,   the   Defendant   began   sending   various correspondences to the Plaintiffs in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

760.    Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiffs, but to the putative class members as well.

761.    Upon information and belief, the Defendant maintains copies of these letters in its records.

762.    The Defendant sent Plaintiffs an initial correspondence around December 2010 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiffs' home.

763.    The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

764.    The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

765.    In its initial (and subsequent) correspondence to the Plaintiffs and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiffs' and the putative class members' note.

766.    For example, the subject line of the correspondence to Plaintiffs stated that the creditor of their loan is BAC. This statement was false.

767.    The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).  Instead, the Defendant identified the loan servicer, BAC, as both the creditor and the servicer of Plaintiff's loan.

768.    The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

769.    Upon information and belief, the Defendant's initial letter to the Plaintiffs, as well as those to the putative class members, contains the following statement about Plaintiffs' thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you received this letter that you want to know the name of the original creditor if that creditor is different from BAC Home Loans Servicing LP, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

770.    The Defendant failed to disclose to the Plaintiffs and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

771.   Further, none of Defendant's subsequent letters to the Plaintiffs and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

772.   Upon information and belief, the Defendant also sent Plaintiffs at least one letter providing them with notice of the foreclosure sale and included a copy of the alleged substitute trustee appointment document.

773.   The correspondence from Defendant to the Plaintiffs and the putative class members further demonstrates that one or more of the Defendant's statements were false.

774.   BAC was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiffs' Deed of Trust. Rather, BAC was merely the collection servicer of Plaintiff's mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

775.   Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

776.   Upon information and belief, the various letters to the Plaintiffs and putative class members further included an alleged Substitution of Trustee document.

777.   The Substitution of Trustee document that the Defendant sent to the Plaintiffs was dated April 8, 2011 and was subsequently filed in Hampton Circuit Court on May 3, 2011.

778.   This document stated that "BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP" was the "present holder or the authorized agent of the holder" of Plaintiffs' mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

779.    The Substitution of Trustee document stated that "BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP" had appointed the Defendant as substitute trustee.

780.    The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiffs' home, by appointing it as substitute trustee.

781.    Plaintiffs' Deed of Trust contains specific provisions for the sale of their Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

782.    Plaintiffs' Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

783.    In section 24, Plaintiffs' Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

784.    Section 22 of Plaintiffs' Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

785.    Plaintiffs' Deed of Trust identifies the Lender of their mortgage as Myers Park Mortgage, Inc.

786.    However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared,

"BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP" was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

787.   Therefore, "BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP" possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

788.   The Substitution of Trustee document was purportedly signed by Defendant's employee, Karla K. Sickerott, as "attorney in fact" for "BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP". Therefore, the Defendant essentially attempted to appoint itself as substitute trustee.

789.   The document was thereafter allegedly notarized. At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

790.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

791.   At all times relevant hereto, the Defendant failed to disclose to Plaintiffs that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiffs' loan in its correspondences to Plaintiffs, and further falsely represented in the substitution of trustee

document that "BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP" was the current Noteholder of Plaintiffs' loan and has the authority to appoint a substitute trustee.

792.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Defendant Forecloses on Ms. Mariner's and Ms. DuBrey's Home

793.   Defendant's correspondence to Plaintiffs stated that their home would be foreclosed and sold unless they paid the entire balance it claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

794.   The foreclosure sale allegedly took place on June 15, 2011 and a deed of foreclosure dated June 15, 2011 ("the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Hampton Circuit Court.

795.   The Deed of Foreclosure stated that Defendant was the substitute trustee at the time the document was prepared. Upon information and belief, this statement was false.

796.   Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

797.   Furthermore, according to Plaintiffs' Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

798.   The Trustee failed to deliver the Deed of Foreclosure conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

799.    Upon information and belief, the Defendant thereafter filed a foreclosure accounting statement with the Hampton Circuit Court's Commissioner of Accounts.

800.    Upon information and belief, the Defendant made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

801.    Defendant made further misrepresentations to the Commissioner when it submitted the false Substitute Trustee and Deed of Foreclosure documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

802.    The Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

803.    As a result of the acts and omissions of the Defendant, the Plaintiffs have suffered actual damages and injury, including but not limited to, the loss of their home, emotional distress, mental anguish, and suffering.

**Q.    Defendant's Specific Conduct Regarding Winnifred Ntow**

804.    Plaintiff Ntow borrowed $206,196.00 in order to finance her home, as evidenced by a promissory note dated April 5, 2010 ("the Note"). The Note was payable to Fifth Third Mortgage Company ("Fifth Third").

805.    The Note was secured by a Deed of Trust dated April 5, 2010 and recorded in the Clerk's office of the Prince William County Circuit Court.

806.    Plaintiff's Note and Deed of Trust obligated her to repay Fifth Third.

807.    Upon information and belief, Bank of America, N.A. purchased the loan subsequent to its origination.

808.    Upon information and belief, at some point, Fifth Third became the servicer of Plaintiff's loan. As servicer, Fifth Third acted on behalf of the owner of the loan to conduct

certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

809. Plaintiff regularly made her payments to Fifth Third until she began to experience financial difficulties and fell behind on her mortgage payments.

810. During this period of financial difficulty, Plaintiff contacted her mortgage servicer, Fifth Third, in an effort to pursue loss mitigation options and submitted a complete loan modification application.

811. In approximately summer 2012, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

812. Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

813. Upon information and belief, the Defendant maintains copies of these letters in its records.

814. Upon information and belief, the Defendant sent Plaintiff an initial correspondence in approximately summer 2012 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

815. The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

816.    The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

817.    Upon information and belief, in their initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

818.    For example, the subject line of the several correspondences that Defendant sent to the Plaintiff stated that the creditor of Plaintiff's loan is Fifth Third Bank. Upon information and belief, this statement was false.

819.    The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).   *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

820.    Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

821.    Upon information and belief, Fifth Third was not a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, Fifth Third is merely the collection servicer of Plaintiff's mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

822.    The Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

823.   The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

824.   The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated June 13, 2012 and was subsequently filed in the Prince William County Circuit Court.

825.   This document stated that Fifth Third Mortgage Company was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

826.   The Substitution of Trustee document stated that Fifth Third Mortgage Company had appointed the Defendant as substitute trustee.

827.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

828.   Section 9(a) of Plaintiff's Deed of Trust states that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ."

829.   Plaintiff's Deed of Trust goes on to state in section 9(d): "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

830.   In section 20, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

831.    Section 18 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale, as permitted by applicable law, which includes the HUD Regulations.

832.    Plaintiff's Deed of Trust identifies the Lender of her mortgage as Fifth Third. However, upon information and belief, another entity owned the loan at the time that the Substitution of Trustee document was prepared.

833.    Any appointment of a substitute trustee would have to have been made by a subsequent noteholder, not merely by the loan servicer. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

834.    The Substitution of Trustee document was purportedly signed by Bard Griffith, an "officer" of Fifth Third Mortgage Company, the claimed noteholder, and was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

835.    Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.    Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

836.    The Defendant failed to disclose the actual creditor to whom the debt was owed and the Noteholder of their loan in its correspondences to Plaintiff, and further the Defendant

falsely represented in the substitution of trustee document that Fifth Third Mortgage Company was the current Noteholder of Plaintiff's loan.

837.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

838.    Plaintiff's mortgage loan was an FHA guaranteed loan.

839.    The requirements of 24 C.F.R. § 203.604 were incorporated as conditions precedent to a foreclosure sale of Plaintiff's home under the Deed of Trust.

840.    Fifth Third Mortgage Company has multiple offices within 200 miles of the Plaintiff and her home.

841.    Neither Plaintiff's creditor, nor Fifth Third, the Defendant, or any other person or entity has complied with the above-alleged regulatory requirements. No face-to-face meeting has been attempted.

842.    Because the FHA required face-to-face meeting prerequisite has not been attempted, let alone accomplished, the Plaintiff's Deed of Trust does not authorize foreclosure and did not authorize the Defendant to proceed with a foreclosure sale.

843.    As substitute trustee under Plaintiff's Deed of Trust, the Defendant had a duty to ensure that the requirements of the Deed of Trust were met prior to attempting to conduct a foreclosure sale of Plaintiff's home.

R.    **Defendant's Specific Conduct Regarding Lori Pinney**

844.    Ms. Pinney borrowed $184,250.00 for her mortgage, as evidenced by a promissory note ("Note"), dated April 30, 2003. The Note was payable to Virginia First Mortgage, LLC ("Virginia First").

845.    The Note was secured by a Deed of Trust dated April 30, 2003 and recorded in the Clerk's office of Circuit Court of Henrico County. Plaintiff's Note and Deed of Trust obligated her to repay Virginia First.

846.    Upon information and belief, PNC Bank, N.A. ("PNC") acquired the servicing rights of the loan. As servicer, PNC acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

847.    Around 2009, Plaintiff began experiencing financial hardship and fell behind on her mortgage. In an attempt to avoid foreclosure and save her home, Plaintiff applied for a loan modification. PNC required Plaintiff to resubmit her documents several times before approving her for a loan modification. However, the modification raised her monthly payment and she still could not afford to pay her mortgage.

848.    In approximately 2010, the Defendant began sending various correspondences to Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct an alleged foreclosure sale. Upon information and belief, the Defendant maintains copies of these letters in its records.

849.    Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home.

850.    Upon information and belief, in their initial correspondence to Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

851.   The various letters to Plaintiff and putative class further included an alleged Substitution of Trustee document. The Substitution of Trustee document sent to Plaintiff was dated August 29, 2010 and was subsequently filed in the Henrico County Circuit Court.

852.   This document stated that PNC was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

853.   Accordingly, at the time that the Substitution of Trustee document was prepared, PNC was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

854.   The Substitution of Trustee document stated that PNC Bank had appointed the Defendant as substitute trustee. Upon information and belief, this information is false, particularly given that Virginia Code §55-59(9) requires that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

855.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

856.   Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

857.   Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

858.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

859.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

860.   Plaintiffs Deed of Trust identifies the Lender of her mortgage as Virginia First. Any authority to appoint a substitute trustee would have to come from Virginia First or a subsequent noteholder. No such authority appears to exist.

861.   The Substitution of Trustee document was purportedly signed by Teresa S. Clopp, an "authorized officer" of PNC, the purported Noteholder. The document was thereafter allegedly notarized. Even after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

862.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

863.   The Defendant failed to disclose the creditor to whom the debt was owed and the noteholder of her loan in their correspondences to Plaintiff, and further falsely represented in the

substitution of trustee document that PNC was the current noteholder of her loan and had the authority to appoint a substitute trustee.

864.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

865.   Relying on Defendant's misrepresentations, Plaintiff borrowed and paid $9,000.00 to the Defendant in order to stop the foreclosure sale of her home. Fearing the Defendant would attempt another foreclosure sale and unable to obtain an affordable loan modification from PNC, Plaintiff subsequently sold her home for significantly less than she could have if she had been able to leave her home on the market for a longer period of time.

S.   **Defendant's Specific Conduct Regarding Stephen & Kristin Poff**

866.   Plaintiffs Poff borrowed $327,314.00 in order to finance their home, as evidenced by a promissory note dated June 7, 2007 ("the Note"). The Note was payable to National City Mortgage, a division of National City Bank ("National City").

867.   The Note was secured by a Deed of Trust dated June 7, 2007 and recorded in the Clerk's office of the Prince William County Circuit Court.

868.   Plaintiffs' Note and Deed of Trust obligated them to repay National City.

869.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

870.   Upon information and belief, at some point, PNC Bank, N.A. ("PNC") became the servicer of Plaintiff's loan. As servicer, PNC acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

871.    Plaintiffs regularly made their payments to PNC until they began to experience financial difficulties and fell behind on their mortgage payments.

872.    Around late 2010 or 2011, Plaintiffs contacted their mortgage servicer, PNC, in an effort to pursue loss mitigation options and submitted a completed loan modification application.

873.    In approximately mid-2011, and while their loan modification application was pending, the Defendant began sending various correspondences to the Plaintiffs in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

874.    Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiffs, but to the putative class members as well.

875.    Upon information and belief, the Defendant maintains copies of these letters in its records.

876.    Upon information and belief, the Defendant sent Plaintiffs an initial correspondence in approximately May 2011 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiffs' home.

877.    The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

878.    The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

879.    Upon information and belief, in their initial (and subsequent) correspondence to the Plaintiffs and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiffs' and the putative class members' note.

880.    For example, the subject line of the correspondence to Plaintiffs stated that the creditor of Plaintiffs' loan is PNC Mortgage, N.A. This statement was false.

881.    The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

882.    The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

883.    Defendant's initial letter to the Plaintiffs, as well as those to the putative class members, contains the following statement about Plaintiffs' thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you receive this letter that you want to know the name of the original creditor if that creditor is different from

PNC Bank, National Association, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

884.    The Defendant failed to disclose to the Plaintiffs and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

885.    Further, none of Defendant's subsequent letters to the Plaintiffs and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

886.    This correspondence to the Plaintiffs and the putative class members also states that "the original note evidencing your indebtedness may be lost or is unavailable at this time."

887.    Upon information and belief, the original note evidencing Plaintiffs' indebtedness had not been lost or was not unavailable, making Defendant's representation false.

888.    Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

. . .

B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

889.    Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust is lost or for any reason could not have been produced.

890.   Upon information and belief, the Defendant also sent Plaintiffs at least one letter providing them with notice of the foreclosure sale and included a copy of the alleged substitute trustee appointment document.

891.   The correspondence from the Defendant to the Plaintiffs and the putative class members further demonstrates that one or more of the Defendant's statements were false.

892.   Upon information and belief, PNC Bank, N.A. was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiffs' Deed of Trust. Rather, PNC Bank, N.A. is merely the collection servicer of Plaintiffs' mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

893.   Further, upon information and belief, the note was never lost or unavailable as the Defendant indicated in its initial correspondence.

894.   The Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

895.   The various letters to the Plaintiffs and putative class members further included an alleged Substitution of Trustee document.

896.   The Substitution of Trustee document that the Defendant sent to the Plaintiffs was dated May 27, 2011 and was subsequently filed in the Prince William County Circuit Court.

897.   This document stated that PNC Bank, N.A. was the "present holder or the authorized agent of the holder" of Plaintiffs' mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

898.   The Substitution of Trustee document stated that PNC Bank, N.A. had appointed the Defendant as substitute trustee.

899.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiffs' home, by appointing it as Substitute Trustee.

900.   Section 9(a) of Plaintiffs' Deed of Trust states that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ."

901.   Plaintiffs' Deed of Trust goes on to state in section 9(d): "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

902.   In section 20, Plaintiffs' Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

903.   Section 18 of Plaintiffs' Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale, as permitted by applicable law, which includes the HUD Regulations.

904.   Plaintiffs' Deed of Trust identifies the Lender of their mortgage as National City.

905.   Any appointment of a Substitute Trustee would have to have been made by National City or a subsequent noteholder, not merely a loan servicer. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the Deed of Trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a Substitute Trustee.

906.   The Substitution of Trustee document was purportedly signed by Bruce Trowman, an "authorized signor" for PNC Bank, N.A., the claimed noteholder, and was

thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

907.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

908.   The Defendant failed to disclose the actual creditor to whom the debt was owed and the Noteholder of their loan in its correspondences to Plaintiffs, and further the Defendant falsely represented in the substitution of trustee document that PNC Bank, N.A. was the current Noteholder of Plaintiffs' loan and had the authority to appoint a substitute trustee.

909.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

910.   Further, Plaintiffs' mortgage loan was an FHA guaranteed loan.

911.   The requirements of 24 C.F.R. § 203.604 were incorporated as conditions precedent to a foreclosure sale of Plaintiffs' home under the Deed of Trust.

912.   PNC has multiple offices within 200 miles of the Plaintiffs and their home.

913.   Neither Plaintiffs' creditor, nor PNC, the Defendant, or any other person or entity has complied with the above-alleged regulatory requirements.   No face-to-face meeting has been attempted.

914.   Because the FHA required face-to-face meeting prerequisite has not been attempted, let alone accomplished, the Plaintiffs' Deed of Trust does not authorize foreclosure and did not authorize the Defendant to proceed with a foreclosure sale.

915.   As substitute trustee under Plaintiffs' Deed of Trust, the Defendant had a duty to ensure that the requirements of the Deed of Trust were met prior to conducting a foreclosure sale of Plaintiffs' home.

916.   Thus, the Defendant conducted a foreclosure sale without any authority to do so.

*Defendant Forecloses on Mr. and Mrs. Poff's Home*

917.   The Defendant's correspondence to the Plaintiffs stated that their home would be foreclosed and sold unless they paid the entire balance the Defendant claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

918.   The foreclosure sale allegedly took place October 5, 2011 and a Deed of Foreclosure (hereafter "the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Prince William County Circuit Court.

919.   Upon information and belief, the Deed of Foreclosure stated that the Defendant was the substitute trustee. Upon information and belief, this statement was false.

920.   Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

921.   Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

922.   Trustees failed to deliver the Deed of Foreclosure conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

923.   The Defendant knew or should have known that each of the foregoing misrepresentations it made were false.

924.   Additionally, the Defendant had a duty to ensure that the prerequisites to foreclosure under Plaintiffs' Deed of Trust were met and failed to do so. The Defendant knew that Plaintiffs' loan was a FHA guaranteed loan. Therefore, the Defendant knew or should have known that it possessed no authority to foreclose on Plaintiffs' home at the time it conducted the foreclosure sale.

925.   As a result of the acts and omissions of the Defendant, Plaintiffs have suffered actual damages and injury, including but not limited to, the loss of their home, emotional distress, mental anguish, and suffering.

**T.    Defendant's Specific Conduct Regarding Jonathan Rance**

926.   Plaintiff Rance borrowed $324,000.00 in order to finance his home, as evidenced by a promissory note dated August 25, 2005 ("the Note"). The Note was payable to E-Loan, Inc. ("E-Loan").

927.   The Note was secured by a Deed of Trust dated August 25, 2005 and recorded in the Clerk's office of the Circuit Court for Fairfax County.

928.   Plaintiff's Note and Deed of Trust obligated him to repay E-Loan.

929.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

930.   At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of his loan.

931.   In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

932.   Plaintiff's loan was thereafter serviced by Bank of America, N.A. ("Bank of America"). As a servicer, Bank of America acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

933.   Plaintiff regularly made his payments to Bank of America until he began to experience financial difficulties and fell behind on his mortgage loan.

934.   During this period, Plaintiff attempted to conduct a short sale of his home.

935.   While approval of the short sale was pending, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

936.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

937.   Upon information and belief, the Defendant maintains copies of these letters in its records.

938.   The Defendant sent Plaintiff an initial correspondence around mid-2010 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

939.   Upon information and belief, the correspondence contained a disclosure stating, "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR."

940.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

941.   Upon information and belief, in its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

942.   For example, the subject line of the correspondence to Plaintiffs stated that the creditor of Plaintiff's loan is BAC Home Loans Servicing LP, fka Countrywide Home Loans Servicing, LP. This statement was false.

943.   The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).   *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).  *Bourff v. Rubin Lublin, LLC*, No. 10-14618, 674 F.3d 1238; 2012 U.S. App. LEXIS 5613, 2012 WL 971800 (11th Cir. Mar. 15, 2012) (stating "[t]he identity of the "creditor" is a serious matter"); *Shoup v. McCurdy & Candler*, 465 Fed. Appx. 882, 2012 U.S. App. LEXIS 6443 (11th Cir. March 30, 2012).

944.   The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

945.   The Defendant's initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you receive this letter that you want to know the name of the original creditor or if that creditor is different from BAC Home Loans Servicing, L.P., then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

946.   The Defendant failed to disclose to the Plaintiff and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

947.   Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

948.   "BAC Home Loans Servicing LP, fka Countrywide Home Loans Servicing, LP" was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, "BAC Home Loans Servicing LP, fka Countrywide Home

Loans Servicing, LP" is merely the collection servicer of Plaintiff's mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

949.    Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

950.    The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

951.    The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated July 25, 2012 and was subsequently filed in the Fairfax Circuit Court.

952.    This document stated that Bank of America was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

953.    The Substitution of Trustee document stated that Bank of America had appointed the Defendant as substitute trustee.

954.    The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

955.    Plaintiff's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

956.    Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

957.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

958.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

959.   Plaintiff's Deed of Trust identifies the Lender of his mortgage as E-Loan.

960.   However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, Bank of America was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

961.   Therefore, Bank of America possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

962.   The Substitution of Trustee document was purportedly signed by Defendant's employee, Karla K. Sickerott, as "attorney in fact" for Bank of America. Therefore, Defendant essentially attempted to appoint itself as substitute trustee.

963.   The document was thereafter allegedly notarized. At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

964.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document

purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

965.    At all times relevant hereto, the Defendant failed to disclose to Plaintiff that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that Bank of America was the current Noteholder of Plaintiff's loan.

966.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

U.    **Defendant's Specific Conduct Regarding John Porter**

967.    Plaintiff Porter borrowed $340,000.00 in order to finance his home, as evidenced by a promissory note dated May 3, 2007 ("the Note"). The Note was payable to Wells Fargo, Bank N.A. ("Wells Fargo").

968.    The Note was secured by a Deed of Trust dated May 3, 2007 and recorded in the Clerk's office of the Circuit Court for Prince William County.

969.    Plaintiff's Note and Deed of Trust obligated him to repay Wells Fargo.

970.    At some point, Freddie Mac acquired Plaintiff's mortgage and became the owner of his loan.

971.    In accordance with the Deed of Trust, Freddie Mac was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

972.    Wells Fargo retained the servicing rights to Plaintiff's loan and continued to act as servicer of his loan. As a servicer, Wells Fargo acted on behalf of the owner of the loan, Freddie

138

Mac, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

973.   Plaintiff regularly made his payments to Wells Fargo until he began to experience financial difficulties.

974.   Plaintiff sought assistance from his loan servicer, Wells Fargo, in an attempt to prevent a foreclosure and ultimately was able to obtain a ratified short sale of his home.

975.   Despite having a ratified short sale, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

976.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

977.   Upon information and belief, the Defendant maintains copies of these letters in its records.

978.   The Defendant sent Plaintiff an initial correspondence dated October 16, 2012 stating that Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

979.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

980. The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

981. In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identified the relevant loan servicer as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

982. For example, the subject line of the correspondence to Plaintiff stated that the creditor of Plaintiff's loan is Wells Fargo. This statement was false.

983. The Defendant failed to disclose to Plaintiff that Freddie Mac was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff. Instead, Defendant falsely represented that Wells Fargo was the current creditor and servicer of Plaintiff's loan.

984. The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2). *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

985. Further, none of Defendant's subsequent letters to the Plaintiff and the putative class members identifies the actual creditor as required by the FDCPA.

986. On or around November 13, 2012, Defendant sent Plaintiff a notice of a foreclosure sale set for November 29, 2012.

987. On November 27, 2012, Plaintiff, by counsel, sent the Defendant written correspondence disputing the amount it claimed was due as well as the creditor that Defendant identified as to whom the debt was owed.

988.   The Defendant responded with a letter dated November 28, 2012 stating that it had verified the debt as due and owing and included a copy of the Note, a copy of the Deed of Trust, and a copy of Wells Fargo's notice of intent to accelerate.

989.   On November 28, 2012, Plaintiff's counsel again informed the Defendant by electronic mail that Wells Fargo is not the creditor of Plaintiff's loan.

990.   Further, Plaintiff's counsel provided Defendant with notice that Wells Fargo's notice of intent to accelerate was defective in that it did not comply with Section 22 of Plaintiff's Deed of Trust, and therefore, Defendant has no authority to foreclose on Plaintiff's home.

991.   Wells Fargo's alleged notice of intent to accelerate Plaintiff's loan was defective in that it did not provide him with all of his rights as he was entitled to receive under his Deed of Trust. For example and without limitation, the notice failed to inform Plaintiff of his right to bring a court action to assert the non-existence of a default or other defense to acceleration and sale.

992.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

993.   Defendant further breached its duty of good faith and its duty of impartiality as a substitute trustee under Plaintiff's Deed of Trust.

V.   **Defendant's Specific Conduct Regarding Carol Robinson-Huntley**

994.   Plaintiff Robinson-Huntley borrowed $78,200.00 in order to finance her home, as evidenced by a promissory note dated February 19, 1999 ("the Note"). The Note was payable to Mortgage Capital Investors, Inc. ("Mortgage Capital").

995.   The Note was secured by a Deed of Trust dated February 19, 1999 and recorded in the Clerk's office of the Prince William County Circuit Court.

141

996.   Plaintiff's Note and Deed of Trust obligated her to repay Mortgage Capital.

997.   Upon information and belief, at some point, Bank of America Home Loans Servicing, LP ("BAC") became the servicer of Plaintiff's loan. As servicer, BAC acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

998.   Plaintiff regularly made her payments to BAC until she began to experience financial difficulties and fell behind on her mortgage payments.

999.   In approximately 2009, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

1000.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

1001.   Upon information and belief, the Defendant maintains copies of these letters in its records.

1002.   Upon information and belief, the Defendant sent Plaintiff an initial correspondence in approximately 2009 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiffs' home.

1003.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

1004.  The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

1005.  Upon information and belief, in their initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1006.  The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

1007.  The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

1008.  Upon information and belief, the Defendant's initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you receive this letter that you want to know the name of the original creditor if that creditor is different from PNC Bank, National Association, then we will obtain and mail to you

verification of the debt and/or the name and address of the original creditor.

1009. Upon information and belief, the Defendant failed to disclose to the Plaintiff and the putative class members that her validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

1010. Upon information and belief, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

1011. Upon information and belief, the Defendant also sent the Plaintiff at least one letter providing her with notice of the foreclosure sale and included a copy of the alleged substitute trustee appointment document.

1012. Upon information and belief, the Substitution of Trustee document that the Defendant sent to the Plaintiff was dated September 21, 2009 and was subsequently filed in the Prince William County Circuit Court.

1013. This document stated that "BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP" was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1014. The Substitution of Trustee document stated that "BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP" had appointed the Defendant as substitute trustee.

1015. The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

1016.   Section 9(a) of Plaintiff's Deed of Trust states that "Lender may, except as limited by regulations issued by the Secretary [of Housing and Urban Development], in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . ."

1017.   Plaintiff's Deed of Trust goes on to state in section 9(d): "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary [of Housing and Urban Development]."

1018.   In section 20, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1019.   Section 18 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale, as permitted by applicable law, which includes the HUD Regulations.

1020.   Plaintiff's Deed of Trust identifies the Lender of his mortgage as Mortgage Capital.

1021.   Any appointment of a substitute trustee would have to have been made by Mortgage Capital or a subsequent noteholder, not merely a loan servicer. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1022.   The Substitution of Trustee document was purportedly signed by Heather Malone, an "assistant secretary" for "BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP", the claimed noteholder, and was thereafter allegedly notarized. At some point

after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1023.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1024.   The Defendant failed to disclose the actual creditor to whom the debt was owed and the Noteholder of their loan in its correspondences to Plaintiff, and further the Defendant falsely represented in the substitution of trustee document that "BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP" was the current Noteholder of Plaintiff's loan or had the authority to appoint a substitute trustee.

1025.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

1026.   Further, Plaintiff's mortgage loan was an FHA guaranteed loan.

1027.   The requirements of 24 C.F.R. § 203.604 were incorporated as conditions precedent to a foreclosure sale of Plaintiff's home under the Deed of Trust.

1028.   "BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP" has multiple offices within 200 miles of the Plaintiffs and their home.

1029.   Neither Plaintiff's creditor, nor "BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP", the Defendant, or any other person or entity has

complied with the above-alleged regulatory requirements.  No face-to-face meeting has been attempted.

1030.  Because the FHA required face-to-face meeting prerequisite has not been attempted, let alone accomplished, the Plaintiff's Deed of Trust does not authorize foreclosure and did not authorize the Defendant to proceed with a foreclosure sale.

1031.  As substitute trustee under Plaintiff's Deed of Trust, the Defendant had a duty to ensure that the requirements of the Deed of Trust were met prior to conducting a foreclosure sale of Plaintiff's home.

1032.  Thus, the Defendant conducted a foreclosure sale without any authority to do so.

### Defendant Forecloses on Ms. Robinson-Huntley's Home

1033.  The Defendant's correspondence to the Plaintiff stated that her home would be foreclosed and sold unless they paid the entire balance the Defendant claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1034.  The foreclosure sale allegedly took place October 23, 2009 and a deed of foreclosure (hereafter "the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Prince William County Circuit Court.

1035.  The Deed of Foreclosure stated that the Defendant was the substitute trustee. Upon information and belief, this statement was false.

1036.  Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.  Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1037.  Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1038.  Trustees failed to deliver the Deed of Foreclosure conveying property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1039.  The Defendant knew or should have known that each of the foregoing misrepresentations it made were false.

1040.  Additionally, the Defendant had a duty to ensure that the prerequisites to foreclosure under Plaintiff's Deed of Trust were met and failed to do so. The Defendant knew that Plaintiff's loan was a FHA guaranteed loan. Therefore, the Defendant knew or should have known that it possessed no authority to foreclose on Plaintiff's home at the time it conducted the foreclosure sale.

1041.  As a result of the acts and omissions of the Defendant, Plaintiff has suffered actual damages and injury, including but not limited to, the loss of her home, emotional distress, mental anguish, and suffering.

**W.    Defendant's Specific Conduct Regarding James Sanmateo**

1042.  Mr. Sanmateo borrowed $275,200.00 for his mortgage, as evidenced by a promissory note ("Note"), dated September 27, 2005. The Note was payable to ESecondMortgage.com, Inc. dba Dollar Realty Mortgage ("ESecondMortgage").

1043.  The Note was secured by a Deed of Trust dated September 27, 2005 and recorded in the Clerk's office of Circuit Court of Fairfax County. Plaintiff's Note and Deed of Trust obligated him to repay ESecondMortgage.

1044.   Upon information and belief, Bank United acquired the servicing rights of the loan. As servicer, Bank United acted on behalf of the owner of the loan to conduct certain customary servicing functions such as collecting and recording payments, communicating with the homeowner, and assessing late fees.

1045.   Around 2010, Plaintiff began experiencing financial hardship and fell behind on his mortgage. In an attempt to avoid foreclosure and save his home, Plaintiff applied for a loan modification, but was denied.

1046.   In approximately 2010, the Defendant began sending various correspondences to Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct an alleged foreclosure sale. Upon information and belief, the Defendant maintains copies of these letters in its records.

1047.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home.

1048.   Upon information and belief, in their initial correspondence to Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1049.   Upon information and belief, the Defendant also sent Plaintiff a letter providing him with notice of the foreclosure sale and further included a copy of the alleged substitute trustee appointment document.

1050.   The correspondence from the Defendant to the Plaintiff and the putative class members demonstrates that one or more of the Defendant's statements were false.

1051.  The various letters to Plaintiff and putative class further included an alleged Substitution of Trustee document. The Substitution of Trustee document sent to Plaintiff was dated July 13, 2010 and was subsequently filed in the Fairfax County Circuit Court.

1052.  This document stated that "Bank United, Assignee of FDIC, as Receiver for Bank United, FSB" was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1053.  Accordingly, at the time that the Substitution of Trustee document was prepared, "Bank United, Assignee of FDIC, as Receiver for Bank United, FSB" was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1054.  The Substitution of Trustee document stated that "Bank United, Assignee of FDIC, as Receiver for Bank United, FSB" had appointed the Defendant as substitute trustee. Upon information and belief, this information is false, particularly given that Virginia Code §55-59(9) requires that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1055.  The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

1056.  Plaintiff's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1057. Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1058. In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1059. Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1060. Plaintiffs Deed of Trust identifies the Lender of his mortgage as ESecondMortgage. Any authority to appoint a substitute trustee would have to come from ESecondMortgage or a subsequent noteholder, not merely a loan servicer. No such authority appears to exist.

1061. The Substitution of Trustee document was purportedly signed by Doreen Pieffner, a senior vice president for the purported Noteholder – "Bank United, Assignee of FDIC, as Receiver for Bank United, FSB". The document was thereafter allegedly notarized. Even after that, the date on the notary block was filled out, presumably once the first page of the document was created so that the dates would match.

1062. Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholders" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1063. The Defendant failed to disclose the creditor to whom the debt was owed and the noteholder of his loan in their correspondences to Plaintiff, and further falsely represented in the substitution of trustee document that "Bank United, Assignee of FDIC, as Receiver for Bank United, FSB" was the current noteholder of his loan.

1064. In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Defendant Forecloses on Mr. Sanmateo's Home

1065. Defendant's correspondence to Plaintiff stated that his home would be foreclosed and sold unless he paid the entire balance it claimed was due on the Note in full prior to the date of the scheduled foreclosure sale.

1066. The foreclosure sale allegedly took place on August 9, 2010 and a deed of foreclosure dated August 9, 2010 ("the Deed of Foreclosure"), which purported to convey the property to a Grantee, was subsequently filed in the Fairfax County Circuit Court.

1067. The Deed of Foreclosure stated that the Defendant was the current Substitute Trustee and that Bank United was the Noteholder. Upon information and belief, these statements were false.

1068. Upon information and belief, the individuals who signed the sworn statements on the Deed of Foreclosure purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing. Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1069. Furthermore, according to Plaintiff's Deed of Trust, in the event of a foreclosure sale, the Trustee is required to deliver title to the highest bidder at the sale.

1070. The Trustee failed to deliver the Deed of Foreclosure conveying the property to the highest bidder, and instead conveyed the property to a third party who was not the highest bidder at the auction.

1071. The Defendant thereafter filed a foreclosure accounting statement with the Circuit Court Commissioner of Accounts for Fairfax County ("the Accounting Statement").

1072. Upon information and belief, the Defendant made certain misrepresentations about the accounting of the proceeds obtained from the foreclosure sale.

1073. Upon information and belief, the Defendant made further misrepresentations to the Commissioner when it submitted the false substitute trustee and deed of foreclosure documents, which the Commissioner relied on when it thereafter approved the accounting of the foreclosure sale.

1074. The Defendant knew or should have known that this and each of the foregoing misrepresentations that it made were false.

1075. As a result of the acts and omissions of the Defendant, Plaintiff has suffered actual damages and injury, including but not limited to, emotional distress, mental anguish, and suffering.

X.    **Defendant's Specific Conduct Regarding Melvin & Shelia Searcy**

1076. Plaintiffs Searcy borrowed $255,000.00 in order to finance their home, as evidenced by a promissory note dated July 17, 2008 ("the Note"). The Note was payable to Access National Mortgage ("Access").

1077. The Note was secured by a Deed of Trust dated July 17, 2008 and recorded in the Clerk's office of the Circuit Court of Bedford County.

1078. Plaintiffs' Note and Deed of Trust obligated them to repay Access.

1079.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

1080.   Freddie Mac subsequently acquired ownership of Plaintiffs' mortgage.

1081.   In accordance with the Deed of Trust, Freddie Mac was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiffs.

1082.   Plaintiffs' loan was thereafter serviced by Wells Fargo Bank, N.A. ("Wells Fargo"). As a servicer, Wells Fargo acted on behalf of the owner of the loan, Freddie Mac, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

1083.   Plaintiffs regularly made their payments to Wells Fargo until they began to experience financial difficulties when Mr. Searcy lost his job.

1084.   In approximately late 2010 or early 2011, Plaintiffs contacted their mortgage servicer, Wells Fargo, in an effort to pursue loss mitigation options and submitted a completed loan modification application. Wells Fargo repeatedly told Plaintiffs that it would not initiate foreclosure proceedings while the loan modification application was pending.

1085.   In approximately early 2011, while their loan modification application was under review, the Defendant began sending various correspondences to the Plaintiffs in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

1086.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these

form correspondences were sent not only to the Plaintiffs, but to the putative class members as well.

1087. Upon information and belief, the Defendant maintains copies of these letters in its records.

1088. The Defendant sent Plaintiffs an initial correspondence around February 2011 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiffs' home.

1089. The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

1090. The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

1091. In its initial (and subsequent) correspondence to the Plaintiffs and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the actual investor or owner of Plaintiffs' and the putative class members' note.

1092. For example, the subject line of the correspondence to Plaintiffs stated that the creditor of Plaintiffs' loan is Wells Fargo Bank, N.A. This statement was false.

1093. The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2). *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005). *Bourff v. Rubin Lublin, LLC*, No. 10-14618, 674 F.3d 1238; 2012 U.S. App. LEXIS 5613, 2012 WL 971800 (11th Cir. Mar. 15,

2012) (stating "[t]he identity of the "creditor" is a serious matter"); *Shoup v. McCurdy & Candler*, 465 Fed. Appx. 882, 2012 U.S. App. LEXIS 6443 (11th Cir. March 30, 2012).

1094. The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

1095. The Defendant's initial letter to the Plaintiffs, as well as those to the putative class members, contains the following statement about Plaintiffs' thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you receive this letter that you want to know the name of the original creditor or if that creditor is different from Wells Fargo Bank, N.A., then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

1096. The Defendant failed to disclose to the Plaintiffs and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

1097. Further, none of Defendant's subsequent letters to the Plaintiffs and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

1098. This correspondence to the Plaintiffs and the putative class members also states that "the original note evidencing your indebtedness may be lost or is unavailable at this time."

156

1099. Upon information and belief, the original note evidencing Plaintiffs' indebtedness had not been lost or was not unavailable, making Defendant's representation false.

1100. Va. Code § 55-59.1 provides the following:

§ 55-59.1. Notices required before sale by trustee to owners, lienors, etc.; if note lost.

...

> B. If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice. The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee.

1101. Upon information and belief, the beneficiary of the note had not submitted to the trustee an affidavit to the effect that the note or other evidence of indebtedness secured by the subject deed of trust was lost or for any reason could not have been produced.

1102. The correspondence from the Defendant to the Plaintiffs and the putative class members further demonstrates that one or more of the Defendant's statements were false.

1103. Upon information and belief, Wells Fargo was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiffs' Deed of Trust. Rather, Wells Fargo is merely the collection servicer of Plaintiffs' mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

1104. Further, upon information and belief, the note was never lost or unavailable as the Defendant indicated in its initial correspondence.

1105. Defendant knew or should have known that this and each of the foregoing misrepresentations it made was false.

1106.   Upon information and belief, the various letters to the Plaintiffs and putative class members further included an alleged Substitution of Trustee document.

1107.   The Substitution of Trustee document that the Defendant sent to the Plaintiffs was dated April 19, 2011 and was subsequently filed in the Bedford County Circuit Court.

1108.   This document stated that Wells Fargo Bank, N.A. was the "present holder or the authorized agent of the holder" of Plaintiffs' mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1109.   The Substitution of Trustee document stated that Wells Fargo Bank, N.A. had appointed the Defendant as substitute trustee.

1110.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiffs' home, by appointing the Defendant as substitute trustee.

1111.   Plaintiffs' Deed of Trust contains specific provisions for the sale of their Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1112.   Plaintiffs' Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1113.   In section 24, Plaintiffs' Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1114.  Section 22 of Plaintiffs' Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1115.  Plaintiffs' Deed of Trust identifies the Lender of their mortgage as Access.

1116.  However, upon information and belief, Freddie Mac was the Noteholder and owner of Plaintiffs' loan at the time the Substitution of Trustee document was created.

1117.  Upon information and belief, at the time that the Substitution of Trustee document was prepared, Wells Fargo was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1118.  Wells Fargo possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1119.  The Substitution of Trustee document was purportedly signed by Defendant's employee, Karla K. Sickerott, as "Attorney in Fact" for Wells Fargo.  Therefore, Defendant essentially attempted to appoint itself substitute trustee.

1120.   The document was thereafter allegedly notarized. At some point after that, the date on the notary block was filled out, presumably once the first page of the document was created so that all of the dates would match.

1121.  Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such

legal standing.    Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1122.    The Defendant failed to disclose that Freddie Mac was the creditor to whom the debt was owed and the Noteholder of Plaintiffs' loan in its correspondences to Plaintiffs, and further falsely represented in the substitution of trustee document that Wells Fargo Bank, N.A. was the current Noteholder of Plaintiff's loan.

1123.    In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

Y.    **Defendant's Specific Conduct Regarding David and Susan Stanley**

1124.    Plaintiffs David and Susan Stanley borrowed $350,500.00 in order to finance their home, as evidenced by a promissory note dated March 1, 2010 ("the Note"). The Note was payable to Wells Fargo Bank, N.A. ("Wells Fargo").

1125.    The Note was secured by a Deed of Trust dated March 1, 2010 and recorded in the Clerk's office of the Circuit Court for Powhatan County.

1126.    Plaintiffs' Note and Deed of Trust obligated them to repay Wells Fargo.

1127.    The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

1128.    At some point, Freddie Mac acquired Plaintiffs' mortgage and became the owner of their loan.

1129.    In accordance with the Deed of Trust, Freddie Mac was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

1130.  Wells Fargo retained servicing rights of Plaintiffs' loan. As a servicer, Wells Fargo acted on behalf of the owner of the loan, Freddie Mac, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

1131.  Plaintiffs regularly made their payments to Wells Fargo until they separated in March 2010, at which time Mr. Stanley took over making the mortgage payments.

1132.  Mr. Stanley continued making the mortgage payments until he began to experience financial difficulties in November 2011 due to some costly repairs of a well on the subject property as well as some health issues.

1133.  Around late 2011, Mr. Stanley wrote Wells Fargo to inform it that he would be able to resume making mortgage payments in February and requested assistance with a repayment or restructure plan for the three missed payments in November, December, and January.

1134.  In early December 2011, Mr. Stanley contacted Wells Fargo by telephone multiple times in an effort to work out a payment plan for the three missed payments and was required to complete paperwork, which he did. Wells Fargo also stated that he would need to submit a final decree of divorce and quitclaim deed.

1135.  Mr. Stanley's final decree of divorce was not entered until February 27, 2012.

1136.  However, Wells Fargo informed Mr. and Mrs. Stanley that they could proceed with the home preservation efforts if Mrs. Stanley filled out all of the financial paperwork as well, but that everything would have to be approved at least ten days prior to the foreclosure date.

1137.  Shortly thereafter, the Defendant began sending various correspondences to Plaintiffs in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

1138.  Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiffs, but to the putative class members as well.

1139.  Upon information and belief, the Defendant maintains copies of these letters in its records.

1140.  The Defendant sent the Plaintiffs an initial correspondence dated February 9, 2012 that stated that Wells Fargo had instructed the Defendant to initiate foreclosure proceedings on Plaintiffs' home.

1141.  The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

1142.  The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

1143.  In its initial (and subsequent) correspondence to the Plaintiffs and the putative class members, the Defendant identified the relevant loan servicer as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1144.  For example, the subject line of the correspondence to Plaintiff stated that the creditor and loan servicer of Plaintiffs' loan was Wells Fargo. This statement was false.

1145.  The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).  *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

1146.  Further, none of Defendant's subsequent letters to the Plaintiffs and the putative class members identifies the actual creditor as required by the FDCPA.

1147.  On or about February 21, 2012, the Defendant sent Plaintiffs a second letter providing them with notice of a foreclosure sale set for March 12, 2012 at 4:15am. This was a false statement, as the foreclosure sale was not actually set for 4:15 in the morning.

1148.  The correspondence from Defendant to the Plaintiffs and the putative class members further demonstrates that one or more of the Defendant's statements were false.

1149.  Wells Fargo is not the "creditor to whom the debt was owed" under the FDCPA. Rather, Wells Fargo is merely the collection servicer of Plaintiffs' mortgage loan, despite the Defendant's correspondence indicating otherwise. At no time did the Defendant identify Freddie Mac as the owner of Plaintiffs' loan.

1150.  Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

1151.  Upon information and belief, the various letters to the Plaintiffs and putative class members further included an alleged Substitution of Trustee document.

1152.  The Substitution of Trustee document that the Defendant sent to the Plaintiff was and was subsequently filed in the Powhatan Circuit Court.

1153.   Upon information and belief, this document stated that Wells Fargo was the "present holder or the authorized agent of the holder" of Plaintiffs' mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1154.   The Substitution of Trustee document stated that Wells Fargo had appointed the Defendant as substitute trustee.

1155.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiffs' home, by appointing it as substitute trustee.

1156.   Plaintiffs' Deed of Trust contains specific provisions for the sale of their Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1157.   Plaintiffs' Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1158.   In section 24, Plaintiffs' Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1159.   Section 22 of Plaintiffs' Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1160.   Plaintiffs' Deed of Trust identifies the Lender of their mortgage as Wells Fargo.

1161.   However, upon information and belief, Freddie Mac was the Noteholder and owner of Plaintiffs' loan at the time the Substitution of Trustee document was created. Therefore,

upon information and belief, at the time that the Substitution of Trustee document was prepared, Wells Fargo was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1162.   Therefore, Wells Fargo possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1163.   Upon information and belief, the Substitution of Trustee document was purportedly signed by an agent for the purported noteholder and was thereafter allegedly notarized. At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

1164.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1165.   At all times relevant hereto, the Defendant failed to disclose to Plaintiffs that Freddie Mac was the creditor to whom the debt was owed and the Noteholder and owner of Plaintiffs' loan in its correspondences to Plaintiffs, and upon information and belief, further falsely represented in the substitution of trustee document that Wells Fargo was the current Noteholder of Plaintiffs' loan and had authority to appoint a substitute trustee.

1166.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Z.   Defendant's Specific Conduct Regarding Francis Tanner

1167.   Plaintiff Tanner borrowed $268,680.00 in order to finance his home, as evidenced by a promissory note dated May 24, 2010 ("the Note"). The Note was payable to Bank of America, N.A. ("BOA").

1168.   The Note was secured by a Deed of Trust dated May 24, 2010 and recorded in the Clerk's office of the Circuit Court for the City of Fredericksburg.

1169.   Plaintiff's Note and Deed of Trust obligated him to repay BOA.

1170.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

1171.   At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of his loan.

1172.   In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

1173.   BOA retained the servicing rights to Plaintiff's loan, although it no longer owned the loan. As a servicer, BOA acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

1174.   Plaintiff regularly made his payments to BOA until he began to experience financial difficulties in fall of 2011 due to a work-related injury that put him out of work for approximately eight weeks.

1175.   Plaintiff contacted BOA and worked out a three-month forbearance plan for his first mortgage that reduced his monthly payments and remained current on his second mortgage.

1176.   Plaintiff agreed to the forbearance plan, but continued to make his escrow payments during this time.

1177.   At the end of January 2012, Plaintiff was advised to apply for the Making Home Affordable Home Affordable Modification Program (HAMP), at which time he promptly submitted all documentation and further confirmed with BOA that all necessary documentation had been received in order to process his HAMP application.

1178.   Despite being under review for HAMP, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

1179.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

1180.   Upon information and belief, the Defendant maintains copies of these letters in its records.

1181.   The Defendant sent Plaintiff an initial correspondence dated February 10, 2012 and received by Plaintiff on February 14, 2012 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

1182.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

1183.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

1184.   In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identified the relevant loan servicer as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1185.   For example, the subject line of the correspondence to Plaintiff stated that the creditor and loan servicer of Plaintiff's loan was BOA. This statement was false.

1186.   Despite the fact that the Defendant had knowledge that Fannie Mae owned Plaintiff's loan, the Defendant failed to disclose to Plaintiff that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff. Instead, Defendant falsely represented that BOA was the current creditor and servicer of Plaintiff's loan.

1187.   The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2).   *See, e.g., Sparkman v. Zwicker & Associates, P.C.,* 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

1188.   Further, none of Defendant's subsequent letters to the Plaintiffs and the putative class members identifies the actual creditor as required by the FDCPA.

1189.   The February 10, 2012 correspondence also stated that Plaintiff owed $268,886.40, significantly more than the actual amount of the debt, as it failed to reflect the forbearance arrangement he made with BOA.

1190.   On February 29, 2012, within the thirty-day period described by 15 U.S.C. § 1692g, Plaintiff sent the Defendant a written letter disputing the amount due, triggering the Defendant's duty to cease collection of the debt and send him verification of the debt pursuant to § 1692g(b). Plaintiff further informed the Defendant that he had a forbearance agreement in place with BOA, and thus his payments were not delinquent.

1191.   The Defendant never sent Plaintiff a response or validation of the debt, but instead continued with its foreclosure efforts, setting a foreclosure sale date of April 3, 2012.

1192.   The Defendant violated the FDCPA by failing to cease collection efforts until it had provided verification of the debt to the Plaintiff.

1193.   Upon information and belief, the various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

1194.   Upon information and belief, the Substitution of Trustee document that the Defendant sent to the Plaintiff was filed in the Circuit Court for the City of Fredericksburg.

1195.   Upon information and belief, this document stated that BOA was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1196.   Upon information and belief, the Substitution of Trustee document stated that BOA had appointed the Defendant as substitute trustee.

1197.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

1198.  Plaintiff's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1199.  Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1200.  In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1201.  Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1202.  Plaintiff's Deed of Trust identifies the Lender of his mortgage as BOA.

1203.  However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, BOA was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1204.  Therefore, BOA possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1205.  Upon information and belief, the Substitution of Trustee document was thereafter allegedly notarized, and at some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

1206.  Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1207.  In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

## AA.   Defendant's Specific Conduct Regarding Alicia Taylor

1208.  Plaintiff Taylor borrowed $202,000.00 in order to finance her home, as evidenced by a promissory note dated November 15, 2006 ("the Note"). The Note was payable to Countrywide Home Loans, Inc. ("Countrywide").

1209.  The Note was secured by a Deed of Trust dated November 15, 2006 and recorded in the Clerk's office of the Circuit Court for Arlington.

1210.  Plaintiff's Note and Deed of Trust obligated her to repay Countrywide.

1211.  The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

1212.   At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of her loan.

1213.   In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

1214.   At some point BAC Home Loan Servicing, LP ("BAC") became the servicer of Plaintiff's loan. As a servicer, BAC acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

1215.   Plaintiff regularly made her payments to BAC until she began to experience financial difficulties and contacted BAC for assistance.

1216.   Plaintiff was eventually able to obtain a temporary modification while her request for a Making Home Affordable Home Affordable Modification Program (HAMP) application was under review.

1217.   Despite being under review for HAMP, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

1218.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

1219.   Upon information and belief, the Defendant maintains copies of these letters in its records.

1220.   The Defendant sent Plaintiff an initial correspondence dated February 9, 2011 and received by Plaintiff on February 11, 2011 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

1221.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

1222.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

1223.   In its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identified the relevant loan servicer as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1224.   For example, the subject line of the correspondence to Plaintiff stated that the creditor and loan servicer of Plaintiff's loan was BAC. This statement was false.

1225.   Despite the fact that the Defendant had knowledge of the actual creditor, the Defendant failed to disclose to Plaintiff that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan in its correspondences to Plaintiff, and further falsely represented that BAC was the current creditor and servicer of Plaintiff's loan.

1226.   The Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2). *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

1227.   Additionally, none of Defendant's subsequent letters to the Plaintiffs and the putative class members identifies the actual creditor as required by the FDCPA.

1228.   The misrepresentation that BAC was the owner of Plaintiff's loan caused her confusion about the alternatives to foreclosure that were available to her because she had (correctly) thought her loan was actually owned by Fannie Mae.

1229.   The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

1230.   Defendant's initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you received this letter that you want to know the name of the original creditor if that creditor is different from BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

1231.   The Defendant failed to disclose to the Plaintiff and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

1232.   The Defendant also sent Plaintiff a correspondence dated February 28, 2011 stating the following:

> Samuel I. White, P.C. is working with BAC Home Loans Servicing, L.P.
> to help you keep your home . . . It is BAC Home Loans Servicing, L.P.'s
> mission to attempt to work out a solution to your loan situation, and they
> have asked us to open a line of communication with you. **WE WANT
> YOU TO BE ABLE TO KEEP YOUR HOME!**"

1233.  Upon information and belief, this was a form letter that the Defendant sent not only to Plaintiff, but to the putative class members as well.

1234.  The February 28, 2011 correspondence from the Defendant to the Plaintiff was false and materially misleading as the Defendant was not working to help the Plaintiff keep her home, but was only hired to foreclose on her home.

1235.  The Defendant sent Plaintiff another letter dated March 8, 2011, which contained a notice of a foreclosure sale date and an alleged Substitution of Trustee document.

1236.  The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated February 14, 2011 and was subsequently filed in the Arlington Circuit Court.

1237.  This document stated that BAC was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1238.  The Substitution of Trustee document stated that BAC had appointed the Defendant as substitute trustee.

1239.  The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

1240.  Plaintiff's Deed of Trust contains specific provisions for the sale of her Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security
> Instrument) can be sold one or more times without prior notice to
> Borrower. A sale might result in a change in the entity (known as the
> "Loan Servicer") that collects Periodic Payments due under the Note and

175

this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1241.  Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1242.  In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1243.  Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1244.  Plaintiff's Deed of Trust identifies the Lender of her mortgage as Countrywide.

1245.  However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, BAC was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1246.  Therefore, BAC possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1247.  The Substitution of Trustee document was purportedly signed by one of Defendant's employees, Karla Sickerott, as "Attorney in Fact" for BAC, and was thereafter allegedly notarized. Therefore, the Defendant essentially attempted to appoint itself substitute trustee.

176

1248.   At some point after that, the dates on the signature and notary blocks were filled out, presumably so that the dates would match.

1249.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1250.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

1251.   As a result of the Defendant's actions, Plaintiff was required to sell her home in order to avoid foreclosure.

**BB.   Defendant's Specific Conduct Regarding Ann and James Wetherbee**

1252.   Plaintiffs Ann and James Wetherbee borrowed $200,000.00 in order to finance their home, as evidenced by a promissory note dated April 11, 2007 ("the Note"). The Note was payable to Bank of America N.A. ("BOA").

1253.   The Note was secured by a Deed of Trust dated April 11, 2007 and recorded in the Clerk's office of the Circuit Court for the City of Portsmouth.

1254.   Plaintiffs' Note and Deed of Trust obligated them to repay BOA.

1255.   The Deed of Trust has a Mortgage Identification Number ("MIN") so that the servicing rights and ownership rights of the mortgage loan can be tracked electronically on the Mortgage Electronic Registration System ("MERS").

1256. At some point, Fannie Mae acquired Plaintiffs' mortgage and became the owner of their loan.

1257. In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiffs.

1258. BOA retained the servicing rights to Plaintiffs' loan. As a servicer, BOA acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

1259. Plaintiffs regularly made their payments to BOA until they began to experience financial difficulties after they were forced to close their heating and cooling company that they owned for twenty-six years.

1260. Although Mr. Wetherbee obtained work with another heating and cooling company immediately, Plaintiffs suffered a drastic decrease in income.

1261. In late 2009, Plaintiffs contacted their mortgage servicer, BOA, in an effort to pursue loss mitigation options at which time BOA informed Plaintiffs that they must be three months behind to be considered for a loan modification.

1262. Over the next year, Plaintiffs submitted several completed loan modification applications. At first, Plaintiffs were told that they made too much money to be considered for any modification programs. After reapplying, Plaintiffs were then told that their income was too low and insufficient to be considered for a loan modification. These and other similarly contradicting results continued to occur over the next year.

1263.   However, after months of persistence, BOA offered Plaintiffs a Trial Period Plan on April 16, 2011, under the federal government's Making Home Affordable Home Affordable Modification Program ("HAMP").

1264.   Plaintiffs complied with all aspects of their Trial Period agreement with BOA and were offered a permanent modification on September 6, 2011.

1265.   When they received the documents, BOA had misspelled Mrs. Wetherbee's name, and she immediately contacted their point of contact at BOA, Tron Nash for instructions on how to proceed.

1266.   Mr. Nash advised Mrs. Wetherbee to return the documents unsigned so that he could reissue the documents with the correct spelling of her name. Mrs. Wetherbee did so and also faxed Mr. Nash a copy of her passport and birth certificate to verify the correct spelling.

1267.   After a couple weeks passed and Plaintiffs still had not received the new modification documents with the corrected spelling of Mrs. Wetherbee's name, Plaintiffs contacted Mr. Nash once again. Mr. Nash informed Plaintiffs that the documents "had been escalated" and that he should receive them within 10 days. However, the documents were never sent and instead Plaintiffs received a letter from the Defendant dated January 4, 2012, which included a notice of a foreclosure sale set for January 24, 2012.

1268.   Around July 14, 2010, the Defendant began sending various correspondences to the Plaintiffs in an attempt to collect the alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

1269.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these

form correspondences were sent not only to the Plaintiffs, but to the putative class members as well.

1270.   Upon information and belief, the Defendant maintains copies of these letters in its records.

1271.   In its correspondences to the Plaintiffs and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiffs' and the putative class members' note.

1272.   For example, the subject lines of July 14, 2010 and January 10, 2011 correspondences to Plaintiffs stated that the creditor of Plaintiffs' loan is BOA. These statements were false.

1273.   Despite the fact that the Defendant had knowledge of the actual creditor, the Defendant failed to disclose to Plaintiffs that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiffs' loan in its correspondences to Plaintiffs, and further falsely represented that BOA was the current creditor and servicer of Plaintiff's loan.

1274.   None of Defendant's subsequent letters to the Plaintiffs and the putative class members identifies the actual creditor or owner of their loan.

1275.   The various letters to the Plaintiffs and putative class members further included an alleged Substitution of Trustee document.

1276.   Defendant's January 4, 2012 correspondence to Plaintiffs provided them with notice of a foreclosure sale set for January 24, 2012 and included a copy of this substitute trustee appointment document.

1277. The Substitution of Trustee document that the Defendant sent to the Plaintiffs was dated January 6, 2011 and was subsequently filed in the Circuit Court for the city of Portsmouth on February 4, 2011.

1278. This document stated that BOA was the "present holder or the authorized agent of the holder of the note" for Plaintiffs' mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1279. The Substitution of Trustee document stated that BOA had appointed the Defendant as substitute trustee.

1280. The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiffs' home, by appointing it as substitute trustee.

1281. Plaintiffs' Deed of Trust contains specific provisions for the sale of their Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1282. Plaintiffs' Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1283. In section 24, Plaintiffs' Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1284. Section 22 of Plaintiffs' Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1285.   Plaintiffs' Deed of Trust identifies the Lender of their mortgage as BOA.

1286.   However, Fannie Mae subsequently became the owner of Plaintiffs' mortgage loan and, upon information and belief, was the Noteholder at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, BOA was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1287.   Therefore, BOA possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1288.   The Substitution of Trustee document was purportedly signed by one of Defendant's employees, Karla Sickerott, as "Attorney in Fact" for BOA, and was thereafter allegedly notarized. Therefore, the Defendant essentially attempted to appoint itself as substitute trustee.

1289.   At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

1290.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge or such legal standing.   Upon information and belief, certain individuals who either signed these statements or purported to notarize them did not do so personally.

1291.  At all times relevant hereto, the Defendant failed to disclose to Plaintiffs that Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiffs' loan in its correspondences to the Plaintiffs, and further falsely represented in the substitution of trustee document that BOA was the current Noteholder of Plaintiffs' loan.

1292.  In short - at no time did the alleged Substitute Trustee, the Defendant, actually provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Defendant Forecloses on Mr. and Mrs. Wetherbee's Home

1293.  Upon receipt of the January 4, 2010 notice of a pending foreclosure sale, Plaintiffs immediately called Mr. Nash inquiring about the notice. However, Mr. Nash informed them that they would receive their modification documents prior to the foreclosure sale and their home would not be sold.

1294.  Although Plaintiffs requested that Mr. Nash postpone the sale, he stated that he could not do so until five days prior to the sale. Nevertheless, Mr. Nash assured Plaintiffs that he would make the postponement at the appropriate time.

1295.  Five days prior to the sale, Mr. Nash informed the Plaintiffs that he requested the sale be postponed and was waiting to hear back from BOA.

1296.  On January 23, 2012, Plaintiffs called Mr. Nash again, who informed them that the sale had been postponed for fourteen days.

1297.  On January 24, 2012, Plaintiffs called Mr. Nash again to ensure that the sale would not occur. However, he was unavailable, and instead, they spoke with a customer service representative who informed them that while Mr. Nash placed a note on the account regarding the extension, there was no actual extension in their system.

1298. This representative instructed Plaintiffs to contact SIWPC directly, but the Defendant's office was already closed.

1299. The next day, Plaintiffs learned that the foreclosure sale had allegedly taken place on January 24, 2012 and their home had been sold.

1300. After learning of the sale, Plaintiffs attempted to contact Mr. Nash and his supervisors, Anna Preisley and Robin Gibson, all of whom refused to return Plaintiffs' calls. Instead, Plaintiffs contacted the Office of the President and Executive Customer Relations of Bank of America and spoke with Christy Nakashima who stated that she would investigate the situation.

1301. Several hours later, Ms. Nakashima contacted Plaintiffs and informed them that Mr. Nash "had drawn the modification documents to the wrong investor" and that she was going to contact Mr. Nash's supervisors to determine how to resolve the error. However, no one from Bank of America has contacted the Plaintiffs to correct the error.

1302. Instead, Plaintiffs received a notice to vacate letter from the Defendant dated February 3, 2012.

1303. The Defendant never had authority to conduct a foreclosure sale and Plaintiffs are actively seeking to get the sale rescinded.

1304. As a result of the acts and omissions of the Defendant, the Plaintiffs have suffered actual damages and injury, including but not limited to, the loss of their home, emotional distress, mental anguish, and suffering.

## CC.    Defendant's Specific Conduct Regarding Melvin Yarbrough

1305.  Plaintiff Yarbrough borrowed $96,250.00 in order to finance his home, as evidenced by a promissory note dated July 22, 2005 ("the Note"). The Note was payable to Bank of America, N.A. ("Bank of America").

1306.  The Note was secured by a Deed of Trust dated July 22, 2005 and recorded in the Clerk's office of the Circuit Court for Norfolk.

1307.  Plaintiff's Note and Deed of Trust obligated him to repay Bank of America.

1308.  At some point, Fannie Mae acquired Plaintiff's mortgage and became the owner of his loan.

1309.  In accordance with the Deed of Trust, Fannie Mae was under no obligation to provide and, in fact, provided no documentation of the sale to Plaintiff.

1310.  Plaintiff's loan was thereafter serviced by BAC Home Loans Servicing, L.P. ("BAC"). As a servicer, BAC acted on behalf of the owner of the loan, Fannie Mae, to conduct certain customary servicing functions, such as collecting and recording payments, communicating with the homeowner, and assessing various fees.

1311.  Plaintiff regularly made his payments to BAC until he began to experience financial difficulties.

1312.  Around 2010, Plaintiff contacted his mortgage servicer, BAC, in an effort to pursue loss mitigation options and submitted a completed loan modification application. He was approved for a loan modification in approximately February 2011. After being approved for the modification, Plaintiff made all of his payments on time.

1313.  In approximately February 2011, after the loan modification had been approved, the Defendant began sending various correspondences to the Plaintiff in an attempt to collect the

alleged debt and further threatened that if the amounts demanded were not paid, it would conduct a foreclosure sale.

1314.   Upon information and belief, these correspondences were form correspondences that the Defendant sent to every consumer from whom it attempted to collect a debt and thereafter conduct a foreclosure sale on their home. Therefore, upon information and belief, these form correspondences were sent not only to the Plaintiff, but to the putative class members as well.

1315.   Upon information and belief, the Defendant maintains copies of these letters in its records.

1316.   The Defendant sent Plaintiff an initial correspondence around February 2011 that stated that the Defendant had been instructed to initiate foreclosure proceedings on Plaintiff's home.

1317.   The correspondence contained a disclosure stating, "THIS IS AN ATTEMPT TO COLLECT A DEBT" and "THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

1318.   The FDCPA, at 15 U.S.C. § 1692g, requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including the name of the creditor to whom the debt is owed.

1319.   Upon information and belief, in its initial (and subsequent) correspondence to the Plaintiff and the putative class members, the Defendant identifies the relevant loan servicers as the creditor to whom the debt is owed, rather than the investor or owner of Plaintiff's and the putative class members' note.

1320.  Upon information and belief, the subject line of the correspondence to Plaintiff stated that the creditor of Plaintiff's loan is BAC. This statement was false.

1321.  Upon information and belief, the Defendant therefore failed to accurately identify the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2). *See, e.g., Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 293, 3001-01 (E.D.N.Y. 2005).

1322.  The FDCPA, at 15 U.S.C. § 1692g, further requires that debt collectors provide certain disclosures to consumers within five days of their initial communications with them, including, for example, the following statement regarding their thirty day validation rights:

> a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector

15 U.S.C. § 1692g(4) (emphasis added).

1323.  Upon information and belief, the Defendant's initial letter to the Plaintiff, as well as those to the putative class members, contains the following statement about Plaintiff's thirty day validation rights:

> If you notify us within thirty (30) days of the date you receive this letter that you are disputing the debt, or any portion thereof, or if you notify us within thirty (30) days after the date you received this letter that you want to know the name of the original creditor if that creditor is different from BAC Home Loans Servicing, LP, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

1324.  Upon information and belief, the Defendant failed to disclose to the Plaintiff and the putative class members that their validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information. Defendant's disclosure was therefore defective.

1325. Upon information and belief, none of Defendant's subsequent letters to the Plaintiff and the putative class members actually identifies the actual creditor or provides the proper disclosures as required by the FDCPA, at 15 U.S.C. § 1692g.

1326. The Defendant also sent Plaintiff a correspondence stating "Please be advised that Samuel I. White, P.C. is working with BAC Home Loans Servicing, L.P. to help you keep your home. . . . It is BAC Home Loans Servicing, L.P.'s mission to work out a solution to your loan situation. **WE WANT YOU TO BE ABLE TO KEEP YOUR HOME!**"

1327. Upon information and belief, this was a form letter that the Defendant sent not only to Plaintiff, but to the putative class members as well.

1328. The correspondence from Defendant to the Plaintiff and the putative class members demonstrates that one or more of the Defendant's statements were false.

1329. Upon information and belief, Defendant was never working with the loan servicer and/or the noteholder to help keep the Plaintiff and the putative class members in their homes.

1330. BAC was never a "creditor to whom the debt was owed" under the FDCPA or even a beneficiary of Plaintiff's Deed of Trust. Rather, BAC is merely the collection servicer of Plaintiff's mortgage loan, despite the Defendant's initial correspondence indicating otherwise.

1331. Defendant knew or should have known that this and each of the foregoing misrepresentations it made were false.

1332. The various letters to the Plaintiff and putative class members further included an alleged Substitution of Trustee document.

1333. The Substitution of Trustee document that the Defendant sent to the Plaintiff was dated February 16, 2011 and was subsequently filed in the Norfolk Circuit Court.

1334.   This document stated that "BAC Home Loans Servicing, L.P., FKA Countrywide Home Loans Servicing, LP" was the "present holder or the authorized agent of the holder" of Plaintiff's mortgage loan at the time that it was prepared. Upon information and belief, this statement was false.

1335.   The Substitution of Trustee document stated that "BAC Home Loans Servicing, L.P., FKA Countrywide Home Loans Servicing, LP" had appointed the Defendant as substitute trustee.

1336.   The Defendant claims that the Substitution of Trustee document gives it the authority to foreclose on Plaintiff's home, by appointing it as substitute trustee.

1337.   Plaintiff's Deed of Trust contains specific provisions for the sale of his Note and the change of loan servicer. Specifically, section 20 states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.

1338.   Plaintiff's Deed of Trust explicitly recognizes a difference between the "Loan Servicer" and the "Noteholder".

1339.   In section 24, Plaintiff's Deed of Trust provides that only the "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."

1340.   Section 22 of Plaintiff's Deed of Trust provides the Lender with the right of acceleration and to invoke a power of sale.

1341.   Plaintiff's Deed of Trust identifies the Lender of his mortgage as Bank of America.

1342.   However, upon information and belief, Fannie Mae was the Noteholder and owner of Plaintiff's loan at the time the Substitution of Trustee document was created. Therefore, upon information and belief, at the time that the Substitution of Trustee document was prepared, BAC Home Loans Servicing, L.P., FKA Countrywide Home Loans Servicing, LP" was not secured by the Deed of Trust, nor did it hold more than 50% of the monetary obligations secured thereby.

1343.   Therefore, BAC Home Loans Servicing, L.P., FKA Countrywide Home Loans Servicing, LP" possessed no authority to appoint a substitute trustee. This is particularly true given that Virginia Code §55-59(9) provides that only the party secured by the deed of trust or the holders of greater than 50% of the monetary obligations secured thereby have the right to appoint a substitute trustee.

1344.   The Substitution of Trustee document was purportedly signed by Defendant's employee, Karla K. Sickerott, as "attorney in fact" for BAC Home Loans Servicing, L.P., FKA Countrywide Home Loans Servicing, LP".  Therefore, the Defendant essentially attempted to appoint itself as substitute trustee.

1345.   The document was thereafter allegedly notarized. At some point after that, the dates on the signature and notary blocks were filled out, presumably once the first page of the document was created so that the dates would match.

1346.   Upon information and belief, the individuals who signed any sworn statements on behalf of the "Noteholder" or thereafter allegedly notarized the Substitution of Trustee document purporting to have personal knowledge of the facts contained in the sworn statement or the legal

standing to take the actions described therein, did not have such personal knowledge or such

legal standing.   Upon information and belief, certain individuals who either signed these

statements or purported to notarize them did not do so personally.

1347.   At all times relevant hereto, the Defendant failed to disclose to Plaintiff that

Fannie Mae was the creditor to whom the debt was owed and the Noteholder of Plaintiff's loan

in its correspondences to Plaintiff, and further falsely represented in the substitution of trustee

document that BAC Home Loans Servicing, L.P., FKA Countrywide Home Loans Servicing,

LP" was the current Noteholder of Plaintiff's loan.

1348.   In short - at no time did the alleged Substitute Trustee, the Defendant, actually

provide the requisite notice of the foreclosure sale in a manner that complied with Virginia law.

### Count I:  Breach of Fiduciary Duties - Fannie Mae Loans
### CLASS CLAIM
### (Plaintiffs Berrios, Vivian Brown, Detsa, Dubrey, Fortune, Hughes, Lopes, Louison, Mariner, Rance, Tanner, Taylor, Ann Wetherbee, James Wetherbee, Yarbrough)

1349.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth

at length herein.

1350.   This matter is brought as a class action for a "Fannie Mae" class, initially defined

as follows:

> All natural persons who were the record owners in fee simple of real
> property located in the Commonwealth of Virginia that by a recorded
> Deed of Trust secured payment of a loan owned by Fannie Mae for whom
> the Defendant claimed it was appointed substitute trustee and attempted to
> conduct a foreclosure sale of the real property within the five years prior
> to the filing of the Complaint, and for whom 1) the records of the
> noteholder or servicer did not contain any record of receipt and
> acknowledgement of receipt of a referral package from the servicer to the
> Defendant, and/or 2) the Defendant failed to obtain the original note or a
> lost note affidavit prior to the date of such foreclosure.  Excluded from the
> class are employees of the Defendant.

191

1351.  Plaintiffs incorporate their prior allegations and estimate that the class is so numerous that joinder of all members is impractical.

1352.  Plaintiffs' counsel is in possession of a substantial number of correspondences and Substitute Trustee appointment documents that Defendant mailed to consumers. Plaintiffs' counsel is also in possession of a substantial number of Deeds of Foreclosure and Reports that Defendant filed with the Commissioners of Accounts for the various Circuit Courts.  These documents have remained consistent and uniform across time, Virginia jurisdictions, and consumers.

1353.  Defendant has conducted and attempted to conduct hundreds of foreclosures in Virginia.  A review of just Fairfax County land records for 2011 shows well over 125 such attempted foreclosures. Defendant has accomplished well more than 50 foreclosures as designated Fannie Mae counsel during the last five years.

1354.  There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  For example, and without limitation:  (a.) whether Defendant's foreclosure of Deeds of Trust owned by Fannie Mae is lawful where Defendant has not otherwise complied with Fannie Mae Servicing Guidelines and governing law;  (b.) whether Fannie Mae Servicing Guidelines and governing law are incorporated within the Defendant's Deed of Trust duties;  and (c.) what remedies are available for such a breach of fiduciary duty.

1355.  Plaintiffs' claims are typical of those of the class members.  All are based on the same facts and legal theories.  The letters, appointment of substitute trustee documents, and deeds of foreclosure are standardized and used across all Virginia jurisdictions and the full class

period. The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

1356. The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

1357. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1358. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1359. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

      a.    As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.   Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually.   Further, most consumers whom the Defendant has threatened and contacted for a foreclosure are likely unaware of their rights under the law, or who they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would also be a waste of judicial resources.   The issues at the core of this case are class wide and should be resolved at one time.   One win for one consumer would set the law as for every similarly situated consumer.

1360.   Plaintiffs and the putative class allege a cause of action for the Defendant's breach of fiduciary duties under the subject Deeds of Trust.   To the extent that it was properly appointed as trustee, Defendant was a fiduciary for both the Plaintiffs and the putative class members as well as the Noteholder, creditor, beneficiary and/or investor, and thus owed fiduciary duties to both parties.

1361.   The Defendant breached its fiduciary duties by undertaking the foreclosure sale and the transfer of the Plaintiffs' and the putative class members' real property without compliance with the Deeds of Trust.   Specifically, the Defendant foreclosed upon the real property when the necessary prerequisites of compliance with the Fannie Mae Servicing Guidelines and Virginia law had not been met.

1362.   Under the Deeds of Trust, Defendant's obligations are subject to and governed by "Applicable Law," including the Fannie Mae Servicing Guidelines.

1363.   Defendant repeatedly breached its fiduciary duties to the Plaintiffs and the putative class members including, but not limited to, the following conduct:

194

a.    By failing to ensure that it received the appropriate foreclosure data from the servicers and the necessary documents to conduct the foreclosure;

b.    By consistently failing to acknowledge receipt of the referral package and failing to request the necessary foreclosure documents, in order to expedite the foreclosure process against the Plaintiffs and the putative class members;

c.    By failing to obtain a complete referral package, including the documents required to conduct a foreclosure under Virginia law prior to conducting the foreclosure; and

d.    By conducting the foreclosure even though the preconditions to foreclosure had not been satisfied under the terms of the Notes and Deeds of Trust.

1364.  As a result, Plaintiffs and the putative class suffered injury and are entitled to recover actual damages and costs against the Defendant.

### Count II:  Breach of Fiduciary Duties - Freddie Mac Loans
### CLASS CLAIM
### (Plaintiffs Bell, Emmanuel, Gail Gold, Harold Gold, Kelly, Porter, Melvin Searcy, Shelia Searcy, David Stanley, Susan Stanley)

1365.  Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1366.  This matter is also brought as a class action for a "Freddie Mac" class, initially defined as follows:

All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan owned by Freddie Mac for whom the Defendant claimed it was appointed substitute trustee and attempted to conduct a foreclosure sale of the real property within the five years prior to the filing of the Complaint, and for whom 1) the records of the noteholder or servicer did not contain any record of request of the original note or a lost note affidavit, and 2) the Defendant failed to obtain the original note or a lost note affidavit prior to the date of such foreclosure. Excluded from the class are employees of the Defendant.

195

1367.  Plaintiffs incorporate their prior allegations and estimate that the class is so numerous that joinder of all members is impractical.

1368.  Plaintiffs' counsel is in possession of a substantial number of correspondences and Substitute Trustee appointment documents that Defendant mailed to consumers. Plaintiffs' counsel is also in possession of a substantial number of Deeds of Foreclosure and Reports that Defendant filed with the Commissioners of Accounts for the various Circuit Courts. These documents have remained consistent and uniform across time, Virginia jurisdictions, and consumers.

1369.  The Defendant has conducted and attempted to conduct hundreds of foreclosures in Virginia.  A review of just Fairfax County land records for 2011 shows well over 125 such attempted foreclosures. The Defendant has accomplished well more than 50 foreclosures as designated Freddie Mac counsel during the last five years.

1370.  There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  For example, and without limitation:  (a.) whether Defendant's foreclosure of a Deed of Trust owned by Freddie Mac is lawful where the Defendant has not otherwise complied with Freddie Mac servicing guidelines and governing law; (b.) whether Freddie Mac servicing guidelines and governing law are incorporated within the Defendant's Deed of Trust duties; and (c.) what remedies are available for such a breach of fiduciary duty.

1371.  Plaintiffs' claims are typical of those of the class members.  All are based on the same facts and legal theories.  The letters, substitute trustee documents, and deeds of foreclosure are standardized and used across all Virginia jurisdictions and the full class period.  The

violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

1372. The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative class and have accepted such responsibilities.

1373. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1374. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1375. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.     As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.   Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually.   Further, most consumers whom the Defendant has threatened and contacted for a foreclosure are likely unaware of their rights under the law, or who they could find to represent them in federal litigation.   Individual litigation of the uniform issues in this case would also be a waste of judicial resources.   The issues at the core of this case are class wide and should be resolved at one time.   One win for one consumer would set the law as for every similarly situated consumer.

1376.   Plaintiffs and the putative class allege a cause of action for Defendant's breach of fiduciary duties under the subject Deeds of Trust.   To the extent that it was properly appointed as trustee, Defendant was a fiduciary for both the Plaintiffs and the putative class members as well as the Noteholder, creditor, beneficiary and/or investor, thus owing fiduciary duties to both parties.

1377.   Defendant breached its fiduciary duties by undertaking the foreclosure sale and the transfer of the Plaintiffs' and the putative class members' real property without compliance with the Deeds of Trust.   Specifically, Defendant foreclosed upon the real property when the necessary prerequisites of compliance with the Freddie Mac servicing guidelines and Virginia law had not been met.

1378.   Under the Deeds of Trust, Defendant's obligations are subject to and governed by "Applicable Law," including the Freddie Mac servicing guidelines.

1379.   Defendant repeatedly breached its fiduciary duties to Plaintiffs and the putative class members including, but not limited to, the following conduct:

a.      By failing to ensure it received the appropriate foreclosure data from the servicers and the necessary documents to conduct the foreclosure;

b.      By consistently failing to request the necessary foreclosure documents, in order to expedite the foreclosure process on Plaintiffs and the putative class;

c.      By failing to obtain a complete referral package, including the documents required to conduct a foreclosure under Virginia law, prior to conducting the foreclosure; and

d.      By conducting the foreclosure even though the preconditions to foreclosure had not been satisfied under the terms of the Notes and Deeds of Trust.

1380.   As a result, Plaintiffs and the putative class suffered injury and are entitled to recover actual damages and costs against the Defendant.

### Count III: Breach of Fiduciary Duties - VA Loans
### CLASS CLAIM
### (Plaintiff Cobia)

1381.   Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

1382.   This matter is also brought as a class action for a "VA Loans" class, initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan insured by the Department of Veterans Affairs and for which property the Defendant drafted, executed and recorded a Deed of Foreclosure upon such Deed of Trust within the five years prior to the filing of the Complaint, and for whom the records of the noteholder or servicer did not contain any record of an attempt to provide a face-to-face meeting with the class member prior to the date of such foreclosure. Excluded from the class are employees of the Defendant.

1383.   Plaintiff incorporates his prior allegations and estimates that the class is so numerous that joinder of all members is impractical.

1384.   Plaintiff's proposed class counsel is in possession of a substantial number of correspondences and Substitute Trustee appointment documents that the Defendant has mailed to consumers.   Plaintiff's proposed class counsel also has a substantial number of Deeds of Foreclosure and Reports that the Defendant has filed with the Commissioners of Accounts. These documents have remained consistent and uniform across time, Virginia jurisdictions, and consumers.

1385.   The Defendant has conducted and attempted to conduct hundreds of foreclosures in Virginia.   A review of just Fairfax County land records for 2011 shows well over 125 such attempted foreclosures.   The Defendant has accomplished more than 50 VA foreclosures during the last five years.

1386.   There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.   For example, and without limitation:   (a.) whether Defendant's foreclosure upon a VA Deed of Trust is lawful where the noteholder and/or servicer have not otherwise complied with VA regulations and governing law; (b.) whether VA regulations and governing law are incorporated within the Defendant's Deed of Trust duties; and (c.) what remedies are available for such a breach of fiduciary duty.

1387.   Plaintiff's claims are typical of those of the class members.   All are based on the same facts and legal theories.   The letters, appointment of substitute trustee documents, and deeds of foreclosure are standardized and used across all Virginia jurisdictions and the full class period.   The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiff's claims rise or fall.

1388.   The Plaintiff will fairly and adequately protect the interests of the class.   Plaintiff has retained counsel experienced in handling actions involving unlawful practices against

consumers and class actions. Neither Plaintiff nor his counsel has any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

1389. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1390. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1391. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

   a.   As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

   b.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers whom the Defendant has threatened and contacted for a foreclosure are likely unaware of their rights under the law or who

they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would also be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

1392. Plaintiff and the putative class allege a cause of action for Defendant's breach of fiduciary duties under the subject Deeds of Trust. To the extent that it was properly appointed as trustee, Defendant was a fiduciary for both the Plaintiffs and the putative class members as well as the Noteholder, creditor, beneficiary and/or investor, thus owing fiduciary duties to both parties.

1393. Defendant breached its fiduciary duties by undertaking the foreclosure sale and the transfer of the Plaintiff's and the putative class members' real property without compliance with the corresponding Deeds of Trust. Specifically, Defendant foreclosed upon the real property when the necessary prerequisite of compliance with the VA regulations and governing law had not been met.

1394. As a result, Plaintiff and the putative class suffered injury and are entitled to recover actual damages and costs against the Defendant.

### Count IV: Breach of Fiduciary Duties - FHA Loans
### CLASS CLAIM
### (Plaintiffs Ntow, Stephen Poff, Kristin Poff, and Robinson-Huntley)

1395. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1396. This matter is also brought as a class action for a "FHA Loans" class, initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded

Deed of Trust secured payment of a loan insured by the Federal Housing Administration and for which property 1) the Defendant attempted to conduct a foreclosure and/or 2) the Defendant drafted, executed and recorded a Deed of Foreclosure upon such Deed of Trust within the five years prior to the filing of the Complaint, and for whom the records of the noteholder or servicer did not contain any record of an attempt to provide a face-to-face meeting with the class member prior to the date of such foreclosure or attempted foreclosure. Excluded from the class are employees of the Defendant.

1397.  Plaintiffs incorporate their prior allegations and estimate that the class is so numerous that joinder of all members is impractical.

1398.  Plaintiffs' proposed class counsel is in possession of a substantial number of correspondences and Substitute Trustee appointment documents that the Defendant has mailed to consumers. Plaintiffs' proposed class counsel also has a substantial number of Deeds of Foreclosure and Reports that the Defendant has filed with the Commissioners of Accounts for the various Circuit Courts. These documents have remained consistent and uniform across time, Virginia jurisdictions, and consumers.

1399.  The Defendant has conducted and attempted to conduct hundreds of foreclosures in Virginia.  A review of just Fairfax County land records for 2011 shows well over 125 such attempted foreclosures.  The Defendant has accomplished more than 50 FHA foreclosures during the last five years.

1400.  There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  For example, and without limitation:  (a.) whether Defendant's foreclosure upon a FHA Deed of Trust is lawful where the noteholder and/or servicer have not otherwise complied with HUD regulations and governing law; (b.) whether HUD regulations and governing law are incorporated within the Defendant's Deed of Trust duties; and (c.) what remedies are available for such a breach of fiduciary duty.

1401.  Plaintiffs' claims are typical of those of the class members.  All are based on the same facts and legal theories.  The letters, appointment of substitute trustee documents, and deeds of foreclosure are standardized and used across all Virginia jurisdictions and the full class period.  The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

1402.  The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions.  Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action.  Plaintiffs are aware of their responsibilities to the putative class and have accepted such responsibilities.

1403.  Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper.  Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1404.  Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1405.  Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.  As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member.  Each of the common facts and legal questions in the case overwhelm the more modest individual damages

issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

       b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers whom the Defendant has threatened and contacted for a foreclosure are likely unaware of their rights under the law or who they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would also be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

1406.  Plaintiffs and the putative class allege a cause of action for Defendant's breach of fiduciary duties under the subject Deed of Trust. To the extent that it was properly appointed as trustee, Defendant was a fiduciary for both the Plaintiffs and the putative class members as well as the Noteholder, creditor, beneficiary and/or investor, thus owing fiduciary duties to both parties.

1407.  Defendant breached its fiduciary duties by undertaking or attempting to undertake a foreclosure sale and the transfer of the Plaintiffs' and the putative class members' real property without compliance with the Deed of Trust. Specifically, the Defendant foreclosed or attempted to foreclose upon the real property when the necessary prerequisite of compliance with the HUD regulations and law had not been met.

1408.  As a result, Plaintiffs and the putative class suffered injury and are entitled to recover actual damages and costs against the Defendant.

**Count VI: Violations of 15 U.S.C. § 1692, *et seq.***
**Fair Debt Collections Practices Act**
**CLASS CLAIM**
**(All Plaintiffs)**

1409.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

1410.   Plaintiffs plead that Defendant violated provisions of the FDCPA pursuant to 15 U.S.C. § 1692e, § 1692f, and § 1692g:

    a.   Generally, § 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e also provides a non-exhaustive list of "conduct" that satisfies this general prohibition. Amongst the non-exclusive list of § 1692e prohibited misrepresentations, in addition to the general proscription of against using "any false, deceptive, or misleading representation or means in connection with the collection of any debt", are:

> (2) The false representation of –
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> ...
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> ...
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> 15 U.S.C. § 1692e

    b.   Section 1692f prohibits generally the use of "unfair or unconscionable means to collect or attempt to collect any debt", and specifically in relevant part:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by agreement creating the debt or permitted by law.

206

...

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if —

> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

15 U.S.C. §1692f

c.      A debt collector must provide a consumer with the name of the creditor to whom the debt is owed pursuant to § 1692g:

(a) Notice of debt; contents.
Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing —

...

> (2) the name of the creditor to whom the debt is owed;
>
> ...
>
> (4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

15 U.S.C. §1692g(a)(2) and §1692g(a)(4) (emphasis added)

1411.   For their class claim brought pursuant to the FDCPA, the Plaintiffs propose a class initially defined as follows: [4]

---

[4] Regardless of what is alleged as a proffered class definition in a complaint, the Court is free to define the class as it finds more appropriate. *Bratcher v. Nat'l Standard Life Ins. Co.* (*In re Monumental Life Ins. Co.*), 365 F.3d 408, 414 (5th Cir. 2004) *cert. denied*, 125 S. Ct. 277 (2004); *Meyer v. Citizens & S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D. Ga. 1985) ("The Court has discretion in ruling on a motion to certify a class. This discretion extends to defining the scope of the class."); *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 655 (D. Idaho 2006) ("At the hearing in this matter, Plaintiffs offered this revised definition. The Court finds that the revised definition better reflects Plaintiffs' claims in these actions. Therefore, the Court will consider the revised definition in making its class certification determination."). *See also Woods v. Stewart Title Guaranty Company*, 2007 WL 2872219 (D. Md. Sept. 17, 2007) (certifying a class of individuals as proposed by plaintiffs during class certification briefing that was broader than the class plaintiffs' alleged in the class action complaint after discovery uncovered a broader group

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendant sent a letter regarding a possible foreclosure sale of their home within the one-year period preceding the filing date of this Complaint. Excluded from the class are employees of the Defendant.

1412.   The Defendant violated § 1692e as to each class member by misrepresenting the noteholders of Plaintiffs' loan through the Defendant's systematic practice of identifying the loan servicers as the beneficiary, noteholder, investor and/or creditor of Plaintiffs' loan in its letters to the class members.

1413.   Plaintiffs allege this class definition because all or substantially all of the class members would have received correspondence from the Defendant with a subject line that stated their loan servicers were the holders of their loans.

1414.   Plaintiffs also allege a "Help Misrepresentation" subclass initially defined as:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendant sent a letter stating that it wanted the consumer to keep his/her home and intended to help the consumer work out a solution to his/her situation within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendant.

1415.   The Defendant violated §1692e as to the Help Misrepresentation subclass because it did not want the consumer to keep his/her home and it did not intend to help the consumer "work out a solution to [his/her] situation".

1416.   Plaintiffs also allege a "Lost Note" subclass initially defined as:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendant sent a letter regarding a possible foreclosure sale of their home, as well as correspondence stating that the mortgage note was lost or otherwise

of individuals harmed by the same practice alleged in the complaint).

unavailable within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendant.

1417.   The Defendant violated §1692e as to the Lost Note subclass because it forwarded correspondence to consumers that falsely represented that the note was lost or unavailable and/or that the Defendant had satisfied the requirements of Va. Code § 55-59.1.

1418.   Plaintiffs also allege an "Failure to Identify Creditor" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendant sent a letter regarding a possible foreclosure sale of their home and to whom the Defendant failed to identify the creditor to whom the debt was owed within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendant.

1419.   The Defendant violated §1692g as to the Failure to Identify Creditor subclass because it failed to identify the creditor to whom the debt was owed in its initial correspondences or within five days of its initial correspondences to consumers.

1420.   Plaintiffs also allege a "Validation of Debts" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendant sent a letter regarding a possible foreclosure sale of their home and to whom the Defendant failed to include in its initial communication or within five days thereafter the requirement that the debt validation request be in writing within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendant.

1421.   The Defendant violated §1692g as to the Validation of Debts subclass because it failed to failed to disclose to the Plaintiffs and the putative class that their debt validation request must be *in writing* in order to trigger the Defendant's duty to provide the requested information correspondences to consumers.

1422. Plaintiffs allege a "Defective Appointment of Substitute Trustee" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendant sent a letter regarding a possible foreclosure sale of their home that enclosed a purported Substitute Trustee appointment document when the Defendant had no right to possession of the property, within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendant.

1423. The Defendant violated §1692e and §1692f as to the Defective Appointment of Substitute Trustee subclass because it falsely stated that it had been properly appointed substitute trustee when in fact the substitution of trustee documents were either signed by the servicer rather than the noteholder, were not properly notarized, were signed by the Defendant as "attorney in fact" for a purported servicer or noteholder, thereby invalidly appointing itself as substitute trustee, and/or where the signatures were forged altogether.

1424. Plaintiffs allege a "No Right to Foreclose" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan that was owned or insured by Fannie Mae, Freddie Mac, the Department of Veteran Affairs and/or the Federal Housing Administration and to whom Defendant mailed a letter in an attempt to collect a debt when the prerequisites to foreclosure had not been satisfied within the one year period preceding the filing date of this Complaint. Excluded from the class are employees of the Defendant.

1425. Defendant violated §1692e and §1692f as to the No Right to Foreclose subclass because it falsely stated and attempted to or did conduct foreclosure sales on homes where the Defendant failed to follow the required prerequisites to foreclosure as incorporated into the Deeds of Trust.

1426.   Plaintiffs allege a "False Statement in Deed of Foreclosure" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendant sent a letter regarding a possible foreclosure sale of their home and for whom Defendant subsequently drafted, executed and recorded a Deed of Foreclosure upon such Deed of Trust in which it stated the Grantee was the last and highest bidder at the sale when in fact the Grantee was not the actual last and highest bidder at the sale within one year period preceding the filing date of this Complaint. Excluded from the class are employees of the Defendant.

1427.   Defendant violated §1692e as to the False Statement in Deed of Foreclosure subclass when it falsely stated in the Deed of Foreclosure that the Grantee was the last and highest bidder at the foreclosure sale when in fact a third party was actually the last and highest bidder at the foreclosure sale.

1428.   Plaintiffs allege an "False Statement About Fees" subclass initially defined as follows:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan and to whom the Defendant sent a letter regarding a possible foreclosure sale of their home and thereafter demanded and/or accepted fees of any amount within the one-year period preceding the filing date of this Complaint. Excluded from the class are employees of the Defendant.

> Plaintiffs allege the following Fannie Mae subclass under the False Statement About Fees subclass:

> All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan where Fannie Mae was the creditor, beneficiary, investor and/or noteholder and to whom the Defendant sent a letter regarding a possible foreclosure sale of their home and thereafter demanded and/or accepted payment of fees in excess of $600.00 within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendant.

Plaintiffs allege the following Freddie Mac subclass under the False Statement About Fees subclass:

All natural persons who were the record owners in fee simple of real property located in the Commonwealth of Virginia that by a recorded Deed of Trust secured payment of a loan where Freddie Mac was the creditor, beneficiary, investor and/or noteholder and to whom the Defendant sent a letter regarding a possible foreclosure sale of their home and thereafter demanded and/or accepted payment of fees in excess of $650.00 within the one year period preceding the filing date of this Complaint. Excluded from the subclass are employees of the Defendant.

1429. Defendant violated §1692e and §1692f as to the False Statement About Fees subclass because it made a series of false statements about the amount of its fees in its letters to Plaintiffs and/or its accounting statements to the Commissioners of Accounts, in which it collected or attempted to collect fees related to Plaintiffs' foreclosures where there was no right to foreclose and/or no valid appointment of it as substitute trustee.

1430. The Fannie Mae subclass involves claims relating to Defendant's collection of fees for more than $600.00 despite knowing that it had a contractual agreement with Fannie Mae that indicated its fees would be capped at $600.00.

1431. The Freddie Mac subclass involves claims relating to Defendant's collection of fees for more than $600.00 despite knowing that it had a contractual agreement with Freddie Mac that indicated its fees would be capped at $650.00.

1432. Plaintiffs incorporate their prior allegations and estimate that the class is so numerous that joinder of all members is impractical.

1433. Plaintiffs' counsel is in possession of a substantial number of correspondences and substitute trustee documents that Defendant mailed to consumers. Plaintiffs' counsel also has a substantial number of Deeds of Foreclosure and Reports that Defendant mailed to consumers

and/or filed with the Commissioners of Accounts. These documents have remained consistent and uniform across time, Virginia jurisdictions and consumers.

1434.   The Defendant uses the same form correspondences that it sends to consumers across Virginia. These form correspondences include the initial correspondences to consumers, substitution of trustee's documents, notices of sale, payoff statements and reinstatement quotes.

1435.   The Defendant has conducted and attempted hundreds of foreclosures in Virginia. A review of just Fairfax County land records for 2011 shows well over 125 such attempted foreclosures.

1436.   There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  For example, and without limitation:   (a.) whether the Defendant routinely misrepresented the identity of the creditor, noteholder, or beneficiary of the debts that it was attempting to collect from Plaintiffs and the putative class members; (b.)  whether the Defendant falsely represented the compensation that it could lawfully receive as a result  of these attempted and/or actual foreclosures; (c.)  whether the Defendant threatened to take or took action that could not legally be taken; (d.)   whether the Defendant used false representations and deceptive means in its attempts to collect money from the Plaintiffs and the putative class members; (e) whether the Defendant failed to properly inform Plaintiffs and the putative class members of their rights to obtain verification of the debt under the FDCPA; and (f) whether the Defendant could lawfully foreclose upon Plaintiffs and the putative class members prior to meeting the requirements of the Deed of Trust and/or other regulations and governing law.

1437.   Plaintiffs' claims are typical of those of the class members.  All are based on the same facts, form documents, and legal theories.  The letters and substitute trustee appointment

documents are standardized and used across all Virginia jurisdictions and the full class period. The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

1438.   The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions.  Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

1439.   Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper.  Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

1440.   Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

1441.   Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.      As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member.  Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually.  Further, most consumers who Defendant will have threatened and contacted for a foreclosure would likely be unaware of their rights under the law or who they could find to represent them in federal litigation. The issues at the core of this case are class wide and should be resolved at one time.  One win for one consumer would set the law as for every similarly situated consumer.

1442.  As a result of Defendant's actions, inactions, or omissions, Plaintiffs and the putative class members identified have suffered injury including but not limited to the loss of their homes, monetary loss for amounts they were required to pay to avoid foreclosure, humiliation, stress over the subject debt, and mental anguish.

1443.  Plaintiffs and the putative class are therefore entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against the Defendant pursuant to 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class members, move for class certification and for actual, statutory, compensatory, and punitive damages against the Defendant; for attorneys' fees and costs; and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFFS**

By _____
                    Of Counsel

Matthew J. Erausquin, VSB No. 65434
Janelle E. Mason, VSB No. 82389
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com
janelle@clalegal.com
casey@clalegal.com

Leonard A. Bennett, VSB No. 37523
Susan M. Rotkis, VSB No. 40639
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Tel:    (757) 930-3660
Fax:    (757) 930-3662
lenbennett@clalegal.com
srotkis@clalegal.com

Kristi Cahoon Kelly, VSB No. 72791
*Counsel for the Plaintiffs*
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
Tel:    (703) 277-9774
Fax:    (703) 591-9285
kkelly@siplfirm.com

Dale W. Pittman, VSB No. 15673
*Counsel for the Plaintiffs*
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Tel:    (804) 861-6000
Fax:    (804) 861-3368
dale@pittmanlawoffice.com

216